UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE SPACE SOLUTIONS, INC.,

              Plaintiff,

        *-against-*

JASON KNEEN,

              Defendant.

Civil Action No.: 15CV4941(LAK)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF TRO AND PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

Plaintiff, which has in this case sued the owner of the domain workbetter.com for Cyber Squatting, respectfully comes to this court seeking a temporary restraining order preventing the transfer or other movement of the domain from its current registrar, during the pendency of this action.

We respectfully submit that the requisite criteria for the obtaining of a restraining order are met as will be illustrated below and the preservation of the *status quo* is just and proper. There will be little or no effect on the defendant inasmuch as he has been holding the workbetter.com domain for many years for the sole purpose of reselling it and has no business or website associated with the domain.

1

# FACTS

The Defendant Jason Kneen is an international web application developer that sells books and software to international clientele.  One of his businesses involves the reselling of domain names.  He lists over 100 domains on his website for resale.

Following the Plaintiff's application for the trademark Work Better, Defendant sought what he referred to as a high price for the sale of the workbetter.com domain to the plaintiff.  The application for the trademark was filed by the Plaintiff on April 25, 2014, and the discussions by email between the Plaintiff and the Defendant for the purchase of the domain name occurred in May of 2014.

In February of 2015, the Defendant renewed/updated his domain registration for workbetter.com.  The trademark registration for Work Better was issued to the Plaintiff on May 19, 2015.

The Defendant registers his domains with multiple registrars, some of which are in Korea and other foreign countries.  The instant domain is registered in the State of Washington with a registrar known as enom.com.

The Plaintiff believes that he is likely to succeed on the merits and that there is a real concern that the Defendant will transfer the domain to a remote jurisdiction once Defendant receives notice of this action.  This Motion is therefore being brought on without notice, pursuant to the expedited method of order to show cause so that this court may freeze the transfer prior to

the service of the complaint on the Defendant. This is the first Order to Show Cause in this case.

## ARGUMENT

### POINT I

### OFFICE SPACE SOLUTIONS is entitled to interlocutory injunctive relief

A preliminary injunction is appropriate on a showing of irreparable harm along with either (1) a likelihood of success on the merits at the trial of this action, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward movant. *See, e.g., Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 376 (2d Cir. 1997); *Fun-damental Too , Ltd. v. Gemmy Industries, Inc.,* 111 F.3d 993, 998-999 (2d Cir. 1997)*; Western Publishing Co., Inc. v. Rose Art Industries*, 910 F.2d 57, 59 (2d Cir. 1990); *Deeper Life Christian Fellowship, Inc. v. Board of Education of the City of New York*, 852 F.2d 676, 679 (2d Cir. 1988); *Eng v. Smith*, 849 F.2d 80, 81 (2d Cir. 1988); *American Cyanamid Co. v. Campagna Per Le Farmacie In Italia S.P.A.*, 847 F.2d 53, 55 (2d Cir. 1988); *Best Cellars, Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 449 (S.D.N.Y. 2000)

Here, it is respectfully submitted that OFFICE SPACE SOLUTIONS is likely to succeed on the merits at trial and will suffer irreparable harm if the TRO is not granted.

## POINT II

## Plaintiff Is Likely To Succeed On The Merits

1. **The Anticybersquatting Consumer Protection Act**

The Anticybersquatting Consumer Protection Act of 1996 (the "ACPA") relevantly states that:

> [a] person shall be liable in a civil action by the owner of a mark…if, without regard to the goods or services of the parties, that person…i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and…(ii) registers, traffics in, or uses a domain name that…(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or] (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark…

ACPA, 15 U.S. Code § 1125(d). The ACPA then lists nine non-exclusive factors courts may weigh to determine the existence of bad faith. To successfully assert a claim under the ACPA, courts have interpreted the statute to require a plaintiff to "demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." *City of Carlsbad v. Shah*, 850 F.Supp.2d 1087, 1104 (S.D. Cal. 2012). Office Links, the holder of the federal registered trademark "Work Better," can show all three of these factors and is therefore entitled to a preliminary injunction against Mr. Kneen that would freeze the domain.

### a. Mark Distinctive at the Time of Registration

"Registered trademarks are presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986).

Courts have held that the presumption of validity and ownership of the mark dates back to the initial filing date. *George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009) ("Registration grants a presumption of ownership, dating ownership to the filing date of the federal registration application."); *Tropic Ocean Airways, Inc. v. Floyd*, 598 Fed.Appx. 608, 611 (11th Cir. 2014) (other circuits have held that the presumption that the marks are distinctive dates back to the filing date of the registration application).

Office Links filed for a trademark in the name "Work Better" with the USPTO in April 2014, and the mark was registered on the principal register in May 2015. Office Links is therefore entitled to the legal presumption that it had a distinctive trademark in April 2014, the date of its trademark filing. Mr. Kneen first registered the domain name in question before the Plaintiff's trademark application, he re-registered/updated it in February 2015. Mr. Kneen therefore re-registered the domain name at a time when Office Links' mark was distinctive, and the first statutory requirement is fulfilled.

Although New York courts have yet to consider whether re-registration should be considered "registration" within the meaning of the statute, the majority of courts to rule on the issue have determined that re-registration will bring a domain owner within the purview of the ACPA. *Xereas v. Heiss*, 933 F.Supp.2d 1, 16-17 (D.D.C. 2013); *Schmidheiny v. Weber,* 319

F.3d 581, 583 (3d Cir. 2003); *Ricks v. BMEzine.com*, LLC, 727 F.Supp.2d 936, 954 (D. Nev. 2010).

The Third Circuit held that "registration" within the Act refers to more than just the initial registration. *Schmidheiny v. Weber,* 319 F.3d 581, 583 (3d Cir. 2003) ("Instead, we conclude that the language of the statute does not limit the word 'registration' to the narrow concept of 'creation registration.'… We hold that the word 'registration' includes a new contract at a different registrar and to a different registrant.") *cf. GoPets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th Cir. 2011)(disagreeing with 3d Circuit view that the Act is furthered by preventing perpetual squatting on domains while those that hold a Trademark are prevented from using the domain that mirrors the mark).

Looking to the Congressional intent underlying the statute, a Nevada District Court determined that "[i]f a domain name was registered in good faith originally, but thereafter re-registered in bad faith, the cybersquatter would escape liability, a result not supportable by the statutory scheme." *Ricks v. BMEzine.com*, LLC, 727 F.Supp.2d 936, 954 (D. Nev. 2010). It therefore held that "[a]ny registration thus may bring the registrant within the statute's purview." *Id.*

Similarly, the District Court of the District of Columbia looked to the Senate report on the ACPA and concluded that "[b]y interpreting the term registration as applying to re-registrations, the scope of coverage extends to each registrant of a domain name rather than only the first registrant. This interpretation furthers the statute's purpose of eliminating cyber-squatting…The terms "register" and "registration" in § 1125(d)(1)(A) should be read to refer to

the initial registration and later re-registrations of the domain name." *Xereas v. Heiss*, 933 F.Supp.2d 1, 16-17 (D.D.C. 2013).

### b. Identical or Confusingly Similar

The ACPA requires that the domain name be identical or confusingly similar to the plaintiff's mark. The domain name in question, workbetter.com, is virtually identical to the Work Better mark. This second statutory requirement is therefore met.

### c. Bad Faith Intent to Profit

The ACPA enumerates nine non-exhaustive factors that courts may consider when determining bad faith. These factors are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).


ACPA, 15 U.S. Code § 1125(d). Courts are not required to consider all of the factors and may look to other facts. Indeed, "the most important grounds for finding bad faith are the unique circumstances of the case." *Lahoti*, 586 F.3d at 1202, citing *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir.2002).

Bad faith does not necessarily need to arise at the time of domain registration. *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 385 (2d Cir.2003) ("Congress intended the cybersquatting statute to make rights to a domain-name registration contingent on ongoing conduct rather than to make them fixed at the time of registration."); *Lahoti*, 586 F.3d at 1202 ("Evidence of bad faith may arise well after registration of the domain name."); *City of Carlsbad*, 850 F.Supp.2d at 1104 ("Even if a domain name is initially registered in good faith, a defendant is still liable for cybersquatting if there is subsequent bad faith use with intent to profit.").

Mr. Kneen may acted in bad faith insofar as he initially registered workbetter.com with the intent to squat on domain, and then his bad faith was manifest when after the Plaintiff's mark became distinctive he both requested a high price from the Plaintiff and re-registered/updated the domain.  Accordingly, the bad faith prong is established.

<u>**Point III**</u>

**There is personal jurisdiction over the defendant**

To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis. *See Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 243–44 (2d Cir.2007). First, we apply the forum state's long-arm statute. *Wilson v. Austin*, 2012 WL 3764512, at *3 (E.D.N.Y. 2012) *report and recommendation adopted,* No. 11-CV-4594 SJF GRB, 2012 WL 3764509 (E.D.N.Y. 2012)

In the State of New York, even if a person lives outside the State or in a foreign country, they can still be required to answer for their conduct if the person "expects or should reasonably expect the act to have consequences in the State and derives substantial revenue from interstate or international commerce."  CPLR §302(a)(3)(ii).  In *Cello Holdings*, the New York Federal Court found that a defendant who sent emails to at least nine individuals attempting to sell domain names, telephoned the plaintiff in New York offering to sell the domain name in question, and offered other domain names for sale on a website, was subject to New York jurisdiction. The court concluded that the exercise of personal jurisdiction would not violate the Due Process of the Constitution because the defendant "telephoned Cello twice and sent an e-mail to Cornell, and thus…'reached out' and 'originated' contacts with New York." *Cello Holdings, L.L.C. v. Lawrence-Dahl Companies*, 89 F.Supp.2d 464, 471 (S.D.N.Y. 2000).

Here, although Kneen does not have an interactive website, he appears to derive substantial revenue from international commerce. The link to his lengthy list of domain names for sale has a prominent location on his website, and the domain names listed include a mix of United Kingdom-specific suffixes (.co.uk) and suffixes that are operated by American company Verisign and under jurisdiction of United States law (.com). Furthermore, he communicated with Mr. Mehta, a New York resident, multiple times with regard to the sale of workbetter.com. *Cello Holdings*, supra; See also *National Football League v. Miller*, 2000 WL 335566 (S.D.N.Y. 2000).  (Out-of-state defendant that targeted and damaged New York plaintiff can be sued in New York Federal court where the defendant profited substantially from international activity). Therefore because Mr. Kneen derives substantial revenue from international commerce and should have reasonably expected his act to have consequences within New York, he is subject to New York jurisdiction.

**Point IV**

**Service by email is appropriate**

The U.K., a signatory to the Hague Convention, does not object to Article 10(a); U.S. Courts have construed this to mean that service of process by international mail is valid. *See, e.g., Complexions, Inc. v. Indus. Outfitters, Inc.,* 2011 U.S. Dist. LEXIS 88047, at *21 (N.D.N.Y. 2011). *Wilson v. Austin*, 2012 WL 3764512, at *5 (E.D.N.Y. June 25, 2012) *report and recommendation adopted,* 2012 WL 3764509 (E.D.N.Y. Aug. 27, 2012).

Service by email has been found just if not more reliable in certain instances, particularly where as here the party presents its email address as a business contact. *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *10 (S.D.N.Y. June 1, 2015) collects cases in support: *Prediction Co. v. Rajgarhia,* No. 09–CV–7459, 2010 WL 1050307, at *2 & n. 13 (S.D.N.Y. Mar. 22, 2010) (finding that it was "reasonably likely that [the defendant] [would] receive the summons and complaint via a message to his recently-used email address" based on an affidavit "detailing [the plaintiff's] use of a Gmail account"); *S.E.C. v. Lines,* No. 07–CV–11387, 2009 WL 2431976, at *2 (S.D.N.Y. Aug. 7, 2009) (permitting service by email where the plaintiff demonstrated that the defendant had "used his email address as recently as last year"); *Pecon Software Ltd.,* 2013 WL 4016272, at *5 ("Service by email comports with due process where the email is likely to reach the defendant."); *Henry F. Teichmann, Inc.,* 2013 WL 1644808, at *2 ("alternate service via email ... comports with constitutional notions of due process because the method of service in [the] case provide[d] notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (internal quotation marks omitted)). See also *GMA*

*Accessories, Inc. v. Megatoys, Inc.*, No. 01 CIV. 12743 (LAK), 2003 WL 193507, at *1 (S.D.N.Y. 2003)("Judge Kaplan permitting email service on China company).

In the present case, authorizing service of process by electronic mail pursuant to Fed.R.Civ.P. 4(f)(3) would satisfy due process, which requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jian Zhang,* at 512 (citing *Luessenhop v. Clinton County, New York,* 466 F.3d 259, 269 (2d Cir.2006)); *see also Ryan,* *2. *See F.T.C. v. PCCare247 Inc.,* 2013 WL 841037, *4 (S.D.N.Y.2013)(e-mail service authorized).

Courts have relied on Fed.R.Civ.P. 4(f)(3) to authorize alternative means of serving process. *Philip Morris USA Inc., v. Veles LTD.,* 2007 WL 725412, *2 (S.D.N.Y.2007). The rule states that "unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or incompetent person, may be effected in a place not within any judicial district of the United States by other means not prohibited by international agreement as may be directed by the court." Fed.R.Civ.P. 4(f)(3). "Service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement." *Ryan v. Brunswick Corp.,* 2002 WL 1628933, *2 (W.D.N.Y.2002).

Courts have held that the Constitution itself does not specify or require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond. *Philip Morris USA Inc.,* *2. Furthermore, "federal courts have traditionally incorporated advances in telecommunications technology to methods of notice giving." *Id.* at *3.

"A district court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." *Jian Zhang,* at 515; *see also In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y.2012) ("The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court."). "By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris USA Inc. supra* at *3.

The Defendant in this case delineated an e-mail address for communication on his principal business website bouncingfish.com which is clearly tailored for international customers of his not insubstantial web app development business, and as such is likely to receive fast and effective notice through his email address.  This notice it is respectfully submitted will be more effective and certainly faster than the Registered Mail notice that is already permitted under the Hague Convention as to UK residents.

## **CONCLUSION**

For the forgoing reasons, it is respectfully requested that this Court grant both a TRO and a Preliminary Injunction to prevent the Defendant from transferring the domain after he receives Notice of this action.

Dated: New York, New York
       June 26, 2015

 

Respectfully submitted,

BOSTANY LAW FIRM, PLLC

_____
John P. Bostany (JB 1986)
Roman Popov (RP 7625)
*Attorneys for Plaintiff*
OFFICE SPACE SOLUTIONS, INC.
40 Wall Street, 28th Floor
New York, New York 10005
(212) 530-4400

Of Counsel

Sarah E. Sears

13