UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————X
                                              :
OFFICE SPACE SOLUTIONS, INC.                  :
                                              :        Case No. 1:15-CV-04941 (LAK)
                    Plaintiff,                :
                                              :
                                              :
                                              :
                                              :
                                              :        *ECF CASE*
                  -against -                  :
                                              :
JASON KNEEN,                                  :
                                              :
                    Defendant.                :
———————————————————————————X


**MEMORANDUM OF DEFENDANT JASON KNEEN  IN OPPOSITION
TO  PLAINTIFF OFFICE SPACE SOLUTIONS, INC.'S
MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ……………………………………..... 1

II.   ARGUMENT ……………………………………………………... 4

    A.    There Is No Personal Jurisdiction Over Mr. Kneen ……………………… 4

    B.    Plaintiff Has Failed To Demonstrate Irreparable Harm …………………… 5

    C.    Plaintiff Lacks Likelihood of Success On The Merits ………………….... 6

        1.    Mr. Kneen's Seniority And "Time of Registration"
             Under The ACPA ……………………………………………… 7

        2.    Mr. Kneen Lacks Any Bad Faith Intent To Profit Off
             Of The Domain Name ………………………………………… 14

        3.    The Balance of Hardships Weighs In Mr. Kneen's Favor …………….. 18

    D.    Plaintiff Comes To This Court With Unclean Hands …………………… 20

        1.    Plaintiff's Representations To This Court ……………………… 21

        2.    Timing Of Plaintiff's Registration Application After Having
             Contacting Mr. Kneen ………………………………………… 21

        3.    Plaintiff's "First Use" and "Use In Commerce" Allegations ………….. 22

        4.    Attempted Theft Of The Domain Name By Plaintiff ……………… 25

    III.   CONCLUSION ……………………………………………... 26

# TABLE OF AUTHORITIES

## Cases

*Citibank, N.A. v. Citytrust,*
  756 F.2d 273, 276 (2d Cir. 1985)..................................................................... 5

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.,*
  125 F.3d 28, 30 (2d Cir. 1997) ................................................................. 24

*Faiveley Transport Malmo AB v. Wabtec Corp.,*
  559 F.3d 110, 118 (2d Cir. 2009) ................................................................. 5

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.,*
  13 F.Supp.2d 417, 419 (SDNY1998) ........................................................... 6

*Goforit Entertainment LLC v. Digimedia.com LP,*
  750 F.Supp.2d 712 (N.D. Tex. 2010) ................................................... 19, 20

*GoPets Ltd. v. Hise,*
  657 F.3d 1024, 1031 (9th Cir. 2011) ....................................... 8, 10, 11

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
  340 F. Supp. 415, 428 (SDNY. 2004) ........................................................ 4

*Marcy Playground, Inc. v. Capitol Records, Inc.,*
  6 F.Supp.2d 277, 281 (SDNY 1998)........................................................... 5

*Marvel Comics Ltd. v. Defiant, a Div. of Enlightened Entm't Ltd.,*
  837 F. Supp . 546, 548 (SDNY 1993) ...................................................... 13

*Melodrama Publishing, LLC v. Santiago,*
  No. 12 Civ. 7830, 2013 WL 1700929 (SDNY April 11, 2013) ................. 13

*New England Duplication Co. v. Mendes,*
  190 F.2d 415, 417 (1st Cir. 1951) ........................................................ 13

*Phoenix-Dolezal v. Lili Ni,*
  Case No. 11-CV-3722, 2012 WL 121105 (SDNY Jan. 17, 2012) ................. 4

*Ricks v. BMEzine.com, LLC,*
  727 F. Supp. 2d 936 (D. Nev. 2010) ........................................................ 11

*Rodriguez v. DeBuono,*
  175 F.3d 227, 234 (2d Cir. 1999).............................................................. 5

*Schmidheiny v. Weber,*
  319 F.3d 581 (3d Cir. 2003) ....................................................... 8, 9, 10

ii

*Storey v. Cello Holdings, LLC,*
   347 F.3d 370, 385 (2d Cir. 2003) ........................................................................... 14

## Statutes

37 C.F.R. §2,122(b)(2) ........................................................................... 13

*Trademark Manual of Examining Procedure*
901.04, 903.07 ........................................................................... 12, 13

## I.   PRELIMINARY STATEMENT

Pursuant to the Court's June 25, 2014 Order to Show Cause, Defendant Jason Kneen hereby submits his opposition to Plaintiff Office Space Solution, Inc.'s Motion for Preliminary Injunction.

As detailed in the Declaration of Defendant Jason Kneen, he is a freelance mobile device application software developer, who is a lifelong citizen and resident of the UK. Mr. Kneen has been engaged in various technical services in the UK during his career, has never resided in the United States and owns no assets in the United States. *See* Declaration of Jason Kneen ("Kneen Decl."), at ¶¶ 1, 4.

As a developer in the field of web and portable computing software, Mr. Kneen has found it useful to register domain names having descriptive connotations of such software products, and to maintain a portfolio of such domain names to be available as needed. Mr. Kneen has occasionally received solicitations from parties interested in purchasing his domain names, and has sold two of them. One in 2004 to a Korean company, and one in 2008 to an Australian company. Mr. Kneen is not regularly engaged in trade in domain names, having sold only two of them in response to inquiries over the course of eleven years. *See* Kneen Decl., at ¶¶ 6, 9.

Sixteen years ago, in February 1999, Mr. Kneen registered the internet domain names workbetter.com, workharder.com and workfaster.com which, collectively, convey the notion of working "harder, better and faster" in the belief they might someday be useful in connection with work management or productivity software, but that the trio might not be available in the future if not registered when the names had occurred to Mr. Kneen. Kneen Decl., at ¶ 8. Mr. Kneen has continuously maintained these domain names as the original and sole registrant since that time.

Domain names are subject to periodic annual fees in order to maintain registration.   In order to automate annual fee payment, Mr. Kneen maintains credit card payment information on file with the registrar, Enom.com, and the annual fee is are automatically billed each February, without any intervention or action required by Mr. Kneen to pay the annual fee.  The most recent fee payment was made in February 2015, and Mr. Kneen made no update or change to the domain registration information at that time.  When the annual fee is paid, the registrar merely extends the registration term by another year, and indicates the registration record to have been "updated."  Kneen Decl., at ¶ 10.

On April 23, 2014, Plaintiff's principal contacted Mr. Kneen to solicit the purchase of the domain name workbetter.com, which Plaintiff admitted was being used by Mr. Kneen to direct visitors to his personal website.   After a brief exchange of messages, Mr. Kneen lost interest in pursuing a conversation with Plaintiff's principal.   During this exchange, Plaintiff's principal stated it desired the domain name for an unspecified future project, and did not assert any claim of rights in the domain name or any trade or service mark whatsoever.  Kneen Decl., at ¶ 11.

On April 25, 2014, two days after reaching out to Mr. Kneen, and without informing him, the Plaintiff filed an intent-to-use based application seeking federal trademark registration of WORK BETTER for a variety of business management services.   As it was an "intent to use" application under Section 1(b) of the Lanham Act, the Plaintiff made no allegation of use in commerce of the prospective mark at the time of filing.  *See* Bernstein Decl., Exh. B.  Despite the Plaintiff's express knowledge at that time that Mr. Kneen had long registered and used the domain name workbetter.com, the Plaintiff swore a Declaration under 18 U.S.C. 1001 to the United States Patent and Trademark Office that to the best of Plaintiff's knowledge, the Plaintiff was solely entitled to use the prospective mark in the future and denying knowledge of other users of the prospective mark.

On June 23, 2014, Mr. Kneen received an email from an internet domain name registrar, informing him that Plaintiff's principal had attempted to initiate a transfer of the domain name to the Plaintiff. As the conversation had ended a month earlier, Mr. Kneen was surprised that Plaintiff had submitted a transfer request for the domain name away from Mr. Kneen entirely without the Mr. Kneen's authorization or consent. Upon demanding an explanation for this apparent attempted theft of the domain name, the Plaintiff's principal denied responsibility, blamed un-named others, and apologized. Again, the Plaintiff made no claim of rights in or to Mr. Kneen's domain name at that time, and stated that the Plaintiff had found a suitable alternative name. *See* Kneen Decl., at ¶¶ 15-16.

When the Plaintiff's intent-to-use application with the USPTO reached allowance, the Plaintiff submitted, in March 2015, a "Statement of Use" to satisfy the "use in commerce" requirement to obtain federal registration under the Lanham Act. Bernstein Decl., Exh. C. The Plaintiff's "Statement of Use" again accompanied by a sworn declaration under 18 USC 1001, claimed a "first use" date of April 1, 2014 and a "first use in commerce" date of February 11, 2015. Accompanying the Plaintiff's sworn declaration was a "Specimen of Use" showing a web page allegedly operated by the Plaintiff using the alleged mark. This web page is shown thereon to be a print-out of a website at www.workbetter.us. However, the registration information for workbetter.us shows that the Plaintiff registered the domain name workbetter.us with the creation date of April 29, 2014 - six days after having reached out to Mr. Kneen - and thus Plaintiff could not possibly have been using the alleged mark as shown in the Specimen as of the claimed "first use" date sworn to by the Plaintiff in the "Statement of Use." *See id.*

After registration of the mark, a few weeks ago, and with no communication or notice thereof to Mr. Kneen, the instant action and application for preliminary injunction followed, ostensibly to prevent transfer of the domain name, despite Plaintiff's longstanding knowledge of

Mr. Kneen's undisturbed registration of the domain name. The only attempt or inclination to alter or transfer the domain name registration undertaken during the meantime has been an unlawful attempt by the Plaintiff to obtain extra-judicial transfer of the domain name without authority to do so.

## II.   ARGUMENT

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies" and should not be routinely granted. To obtain a preliminary injunction, a party must demonstrate (1) probability of irreparable harm in the absence of injunctive relief and (2) either (A) a likelihood of success on the merits of the claim, or (B) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief. The party seeking the injunction must show a 'clear' or 'substantial' likelihood of success where the injunction sought is mandatory – *i.e.*, it will alter, rather than maintain, the status quo." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 428 (SDNY. 2004) *order aff'd in part, vacated in part*, 454 F.3d 108 (2d Cir. 2006). Plaintiff has not met its burden.

### A.     There Is No Personal Jurisdiction Over Mr. Kneen

This Court lacks personal jurisdiction over Mr. Kneen. In *Phoenix-Dolezal v. Lili Ni*, Case No. 11-CV-3722, 2012 WL 121105 (SDNY Jan. 17, 2012) (Kaplan, J.) (unreported), plaintiff brought an Anticybersquatting Protection Act case against a California defendant. *See* Bernstein Decl., Exh. F. The New York plaintiff had contacted the California defendant by e-mail inquiring as to whether the domain name, Phoenix.tv was for sale. Defendant had registered the Phoenix.tv domain name "years before [the plaintiff] sought to register his mark." Id. Plaintiff approached defendant by e-mail to discuss the possible purchase of the domain name. The defendant responded in an e-mail to the plaintiff that he would be willing to sell the

domain name for $2 million. Litigation then ensued.  On defendant's motion to dismiss based on lack of personal jurisdiction, this Honorable Court granted the dismissal because defendant had insufficient contacts with New York based on an e-mail.  *See* Bernstein Decl., Exh. F.

Here, the Court should deny the request for a preliminary injunction because Mr. Kneen is a UK citizen and resident. He has no assets or property in the U.S., is self employed in the UK, and made two short visits to the US recently for the limited purpose of speaking at technical conferences on the subject of software development.  He did not take any purposeful action towards New York when Mr. Mehta initiated contact with him by sending LinkedIn messages to him and not the other way around.  *See* Kneen Decl., at ¶¶ 11-12.  Indeed, Mr. Kneen did not expect his short exchanges with Mr. Mehta to have any consequences in New York.

Accordingly, Mr. Kneen respectfully requests the Court deny the preliminary injunction on the basis that it lacks personal jurisdiction over him.

### B.    Plaintiff Has Failed To Demonstrate Irreparable Harm

Demonstration of irreparable harm is the *sine qua non* for the grant of a preliminary injunction and Plaintiff has utterly failed to satisfy this requirement.  Indeed, the Second Circuit has stated that "[a] showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.2009) (*quoting Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). Irreparable injury ordinarily is presumed in copyright and trademark cases.  "But it is equally well established that any such presumption of irreparable harm is inoperative if the plaintiff has delayed in bringing suit or in moving for preliminary injunctive relief." *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F.Supp.2d 277, 281 (SDNY 1998) (Kaplan, J.) (citation and internal quotations omitted); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) (finding that a nine-month delay in requesting a preliminary injunction negated presumption of irreparable

harm). While there is no rigid deadline by which a plaintiff must move for preliminary injunctive relief, "courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 13 F.Supp.2d 417, 419 (SDNY1998).

Here, Plaintiff alleges to have engaged in correspondence with Mr. Kneen concerning the domain name "in May 2014," more than one year ago. Clearly, Mr. Kneen has been aware of Plaintiff's interest in the domain name for more than a year, and yet the domain name remains as it has been for sixteen years, undisturbed and registered to Mr. Kneen through the designated registrar. Despite the parties clearly having communicated on the subject of Mr. Kneen's domain name more than a year ago, the Plaintiff has taken no action whatsoever to secure the domain name against the supposed evasive tendencies of Mr. Kneen which the Plaintiff now fears. Other than an unfounded apprehension, there is no factual basis alleged to support the extraordinary relief the Plaintiff now seeks against Mr. Kneen and the registrar, a non-party to the present action. The Plaintiff does not allege or suggest any impairment or obstacle to the Plaintiff's ability to have taken action since having contacted Mr. Kneen over a year ago, and the Plaintiff's delay is thus inexcusable.

**C.     Plaintiff Lacks Likelihood of Success On The Merits**

The Anti-Cybersquatting Consumer Protection Act (15 USC 1125(d)) was enacted in 1999, in the midst of the turn of the century Internet explosion. Its general purpose was to counter the predatory practice of intentional registration of longstanding famous or distinctive trademarks by the technically savvy and financially ill-motivated, with an eye toward ransoming these names to brand owners for their nascent conduct of commerce via the Internet. The ACPA sets forth initial conditions of distinctiveness, priority, and similarity, and then lists a set of non-exclusive factors to guide the determination of bad faith intent. As used by the Plaintiff on the

facts here, the ACPA is merely a tool for a species of trademark mis-use known as "reverse domain hi-jacking" in which the purpose-built veneer of a cybersquatting claim is constructed to deprive a senior domain registrant of a domain name on the basis of a junior claim.

### 1.    Mr. Kneen's Seniority And "Time of Registration" Under The ACPA

The ACPA requires, as alternative initial conditions of standing that:

> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

Both of these alternative conditions refer to "the time of registration of the domain name." The Plaintiff admits that Mr. Kneen registered the domain name well prior to the Plaintiff's application for registration with the USPTO on an intent-to-use basis. Indeed, Mr. Kneen registered the domain name some fifteen years prior to the Plaintiff's application for an alleged mark for advertising and business administration services, which issued a few weeks ago.

If "time of registration of the domain name" in the ACPA means what it says, there is simply no merit to the Plaintiff's claim here. Hence, the Plaintiff's motion vaguely refers to an unspecified "re-registration" or "updating" of the domain name, in which the Plaintiff claims Mr. Kneen to have engaged as of February 2015. The Plaintiff's motion does not identify what such alleged "re-registration" or "updating" constituted in any great detail.

The registration data for the Workbetter.com domain name as of February 18, 2014 (prior to contact by the Plaintiff), compared to the registration data for the domain name as of May 14, 2015 (after contact by the Plaintiff), is shown successively in Exhibit B to the Bernstein Declaration. The domain name was not "re-registered" by Mr. Kneen in February 2015. Instead, it is shown to be registered to the same Defendant, Mr. Kneen, through the same registrar. As domain names are subject to annual fee maintenance fee payments, the only "update" in the domain name data is the expiration date on which the next annual fee is due.

Payment of that annual registration fee at the regular February due date, was further not carried out by any volitional act of Mr. Kneen whatsoever, but by an automated charge to his credit card on file with the registrar. *See* Kneen Decl., at ¶10.  Hence, the "updated" notation merely reflects an automatic operation conducted by the registrar upon payment of the annual maintenance fee. The registrant data and the registrar remain the same, and the domain name was not "updated" by Mr. Kneen in any way whatsoever.

The Plaintiff oddly premises its discussion of "strong likelihood of success" by initially noting that the Second Circuit has not addressed a central issue of timing here at all. Mr. Kneen submits that lack of controlling authority is not an auspicious foundation for such confidence. Furthermore, as discussed in detail below, the reason for such lack of authority is that the clear and unquestioned plain meaning of the statute as applied to the facts hardly render the outcome subject to serious dispute.

The only Circuit Court decisions which have indirectly addressed issues relating to the timing of domain registration for the purposes of the ACPA have been *Schmidheiny v. Weber*, 319 F.3d 581 (3d Cir. 2003), and much more recently *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th Cir. 2011).   Both of these cases involved an original registration of a domain name to a first named registrant, and then a transfer of that domain name to a legally-distinct and different registrant at a later time.   Hence, in both cases, the question was more one of "tacking" than when was the "date of registration" in relation to a trademark claim.

The inquiry in *Schmidheiny* approached the question of timing of "registration" in the context of whether ACPA applied to any domain name originally registered - by anyone - prior to passage of the ACPA.  However, the defendant in *Schmidheiny* was not the original registrant. The operative facts therein are recited as follows:

> [T]he domain name was initially registered by Steven Weber personally on February 28, 1999, before the Act took effect on November 29, 1999.  Because we conclude that a

subsequent registration by Famology.com, Inc. in June 2000 is an action within the purview of the Anti-cybersquatting Act, we will reverse . . .

In November 2000, Appellee Steven Weber sent an email to Schmidheiny's assistant, offering to sell Schmidheiny the domain name of schmidheiny.com. At the time, the schmidheiny.com domain name was registered to Appellee Famology.com, Inc.

*Schmidheiny*, 319 F.3d at 581-82. Because the "original" registration was to a "Steven Weber" but the domain name was later registered to a "Famology.com, Inc." the court concluded that the later registrant of the domain name after the intervening passage of the ACPA was not entitled to rely on the original registrant's registration date of the domain name in order to claim the ACPA did not apply, in stating:

We hold that the word "registration" includes a new contract at a different registrar and to a different registrant. In this case, with respect to Famology.com — that occurs after the effective date of the Anti-cybersquatting Act.

To conclude otherwise would permit the domain names of living persons to be sold and purchased without the living persons' consent, ad infinitum, so long as the name was first registered before the effective date of the Act.

*Id.* at 583. The *Schmidheiny* court recognized post-creation "re-registration: to constitute a transfer to a "different registrar and to a different registrant." There is no such "different registrar" and "different registrant" to be found in this case, during the period of interest pre- and post-issue of the Plaintiff's alleged federal trademark registration, or the date of application thereof, as shown and discussed above in connection with Exhibit A to the Bernstein Declaration. Instead there is only the "update" of the expiration date, which was merely a registrar operation reflecting the automatic payment of the regular annual fee on behalf of the same registrant at the same registrar in February 2015. Such update of the expiration date is not a "re-registration" as that term is used in *Schmidheiny*.

The *Schmidheiny* court was concerned that domain names registered prior to November 1999 could be traded among different parties in perpetuity, while escaping application of the ACPA. However, if the Plaintiff urges this court to apply *Schmidheiny* to the facts here, then the

lack of re-registration to both a "different registrar and to a different registrant" on the instant facts would direct a finding that the ACPA does not apply to this domain name, likewise registered in February 1999, but which has remained solely in the hands of Mr. Kneen since that time.

GoPets Ltd. v. Hise, 657 F.3d 1024 (9th Cir. 2011) addressed a type of "re-registration" for purposes differing from Schmidheiny, but for purposes somewhat more relevant to the facts here. Whereas Schmidheiny was concerned about whether the ACPA is applicable to a since-transferred pre-ACPA domain name, GoPets addressed the question of whether a domain name created senior to a trademark, but transferred to another party after registration of the trademark, was "registered" before or after the trademark issued. In GoPets, a Mr. Hise registered a disputed domain name originally and senior to the mark at issue, but later transferred the domain name to a corporation he controlled, after the trademark claim had been established. Considering the ACPA requirement that the mark be "distinctive at the time the domain name was registered," and considering the change of registrant in the meantime since original domain registration, the GoPets court found:

> Looking at ACPA in light of traditional property law, however, we conclude that Congress meant "registration" to refer only to the initial registration. **It is undisputed that Edward Hise could have retained all of his rights to gopets.com indefinitely if he had maintained the registration of the domain name in his own name.** We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner. (Emphasis Added)

657 F.3d at 1031. Whether Schmidheiny and GoPets are, or are not, in accord, is fundamentally irrelevant to the facts here, because both decisions grappled with the relevant time of "registration" of a domain name that had been originally registered to one party and subsequently transferred to another party. There has been no transfer of the workbetter.com domain name by Mr. Kneen here. Here is the same person who registered the domain name in

February 1999.  Indeed, *GoPets* addresses the simpler question of "registration" timing in the absence of a transfer, noting it was "undisputed" that the original registrant would retain indefinite rights to the domain name by maintaining it in his own name, as are the facts here.

Likewise, Plaintiff cites a pre-*GoPets* District of Nevada decision, *Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936 (D. Nev. 2010), involving a complicated series of transfers and transactions changing the identified registrant of the domain name multiple times after an "original" registration in 2000, and involving registration via so-called privacy services which hide the identity of the registrant.  However, whether any of these transactions constituted a new "registration: for the "time of registration" purposes of the ACPA was deemed irrelevant by the court in denying the domain registrant Ricks' motion for summary judgment.  On the point of timing, the *Ricks* court found "[t]he [trademark claimant] has presented evidence that BMEzine has been on the internet in one form or another since 1994, and that it quickly thereafter gained fame in the relevant community."

Hence, while the domain registrant in *Ricks* believed the junior date of federal registration with the USPTO in relation to the domain name was dispositive, the potential existence of senior common law rights and fame by the trademark claimant prior to any "original registration" or "re-registration" was the sole determinative and sufficient material question on which to deny summary judgment on the entire issue of timing.  In contrast, there is no question here that Plaintiff's trademark claim did not exist prior to Mr. Keen's original registration of the domain name and his continued maintenance of the domain name as sole registrant thereof at all relevant times as shown in Exhibit A to the Bernstein Declaration.  Indeed, Plaintiff's application before the USPTO did not exist until two days after the Plaintiff had contacted Mr. Kneen seeking to purchase the domain name.  The Plaintiff's USPTO filing just after contacting Mr. Kneen cannot be a mere coincidence, but evinces a plan by the Plaintiff to instigate a

conversation to purchase the domain name roughly concurrent with filing the application, for the sole purpose of making the ACPA claim advanced here.

Mr. Kneen submits there is a definite reason for an absence of circuit court decisions addressing the question of whether a domain name which was originally registered senior to a trademark claim may continue to be maintained by the original registrant absent transfer thereof, and it is an exceeding simple reason.   There is no ambiguity in the plain language of the ACPA requiring a "mark that is distinctive at the time of registration of the domain name".   Contentious issues have arisen in circumstances of subsequent transfers of a domain name among different parties.   However, when the registrant of the domain name is the original and identical registrant thereof, and senior to any trademark claim at all, the plain language of the ACPA has apparently been sufficient to deter fundamentally meritless ACPA claims based on clearly junior trademark allegations, such as the instant action.

It is not at all clear why the Plaintiff claims at various points that its alleged mark became "distinctive" in February 2015.   The Plaintiff's registration issued a few weeks ago in May 2015.  At the time the Plaintiff's application was filed, it was on the basis of a mere intent-to-use the mark in the future.   Apparently, the Plaintiff expects this Court to accept the allegation of "first use in commerce" claim made in the Plaintiff's application to have been "first used in commerce" on February 11, 2015.   There is no basis for this Court to accept such allegation as fact.   The "first use in commerce" claim is a mere unexamined *ex parte* allegation made to satisfy the formal requirements of registration.   The USPTO itself does not accept "first use in commerce" claims in *inter-partes* proceedings within the USPTO, as noted in the relevant portions of the USPTO *Trademark Manual of Examining Procedure*:

901.04 Inquiry Regarding Use in Commerce

It is the responsibility of the applicant and the applicant's attorney to determine whether an assertion of use in commerce is supported by the relevant factual situation. **The**

**validity of an applicant's assertion of use in commerce generally does not arise in ex parte examination.** The examining attorney will normally accept the applicant's verified claim of use in commerce without investigation into whether the use referred to constitutes "use in commerce." (Emphasis Added)

903.07 Indefinite Dates of Use

In an inter partes proceeding, a date of use must be established by appropriate evidence unless the party to the proceeding is entitled to rely on a date by virtue of ownership of a registration or filing of an application. 37 C.F.R. §2.122(b)(2); Trademark Trial and Appeal Board Manual of Procedure ("TBMP") §704.04.

Authority for these administrative guidelines of the USPTO derive from 37 CFR §2.122(b)(2) - "[t]he allegation in an application for registration, or in a registration, of a date of first use is not evidence on behalf of the applicant or registrant; a date of first use must be established by competent evidence." Concerning when a registered mark may be considered to have been in "first use in commerce" this Honorable Court held in *Melodrama Publishing, LLC v. Santiago*, No. 12 Civ. 7830, 2013 WL 1700929 (SDNY April 10, 2013):

The "talismanic test" for whether a given use of a mark constitutes a statutory "use in commerce" is whether or not the use was "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark."

*Marvel Comics Ltd. v. Defiant, a Div. of Enlightened Entm't Ltd.*, 837 F. Supp . 546, 548 (SDNY 1993) (*quoting New England Duplication Co. v. Mendes*, 190 F.2d 415, 417 (1st Cir. 1951)). *See* Bernstein Decl., Exh. G.

The Plaintiff's mere allegation of "first use in commerce" in its trademark registration application is not probative evidence of any significant event, distinctiveness or rights inhering in the Plaintiff's alleged mark, or its then-pending application, as of the alleged date of February 11, 2015. Indeed, in *Melodrama*, this Honorable Court found active fraud to have been committed by the claimant asserting a federal registration on the basis of a false allegation of first use in commerce and cancelled the federal registration asserted in that proceeding.

13

Here, it appears that the Plaintiff's "first use in commerce" allegation was informed more by the known date on which Mr. Kneen's annual fee for registration was due, than by any actual commercial activities by the Plaintiff. Oddly, however, while the Plaintiff claimed a "first use in commerce date" of February 11, 2015, it can be clearly seen in Exhibit A of the Bernstein Declaration that the "update" of payment of the annual maintenance fee was done by the registrar on February 15, 2015. Hence, it is not entirely clear what the Plaintiff seeks to prove in connection with the February 2015 date. Moreover, and as discussed further below, the Plaintiff is curiously silent in relation to any commercial activities conducted under the mark at any date whatsoever.

### 2.     Mr. Kneen Lacks Any Bad Faith Intent To Profit Off Of The Domain Name

Beyond the "time of registration" requirement, the ACPA requires the domain name to have been registered with a "bad faith intent to profit" on the basis of the plaintiff's trademark rights. In assessment of bad faith, post-registration conduct of the domain registrant may indeed be relevant to determining what was the domain registrant's intent at the time of registration. *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 385 (2d Cir. 2003) ("Congress intended the cybersquatting statute to make rights to a domain-name registration contingent on ongoing conduct rather than to make them fixed at the time of registration"). The ACPA provides a non-limiting guide to factual circumstances or types of behavior that may assist "[i]n determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to . . . ."

Of course, by such discretionary and open language, the statute suggests a court "may" or "may not" consider the enumerated factors for "determining whether a person has a bad faith intent" depending on whether the court has other and more means of determining the domain registrant's intent in relation to the domain name, and whether such an intent was to profit by

usurping the goodwill of another.   Here, the domain name was registered as one of a trio of domain names at the same time by Mr. Kneen, which combined the prefix "work" with the words "better," "harder," and "faster"   *See* Kneen Decl., at ¶8.  While Mr. Kneen believed such domain names might well come in handy for a future software project relating to productivity software, in the meantime he used them as self-laudatory descriptors of himself, and the domain names forward to his personal online journal. Mr. Kneen's use of the disputed domain name here was, in fact, admitted by the Plaintiff's principal when the Plaintiff's principal initially contacted Mr. Kneen on April 23, 2014, and referred to workbetter.com as a "domain that you own and redirects to your personal website." *See* Kneen Decl., at ¶ 11. What is absolutely clear is that the Plaintiff at no point alleges Mr. Kneen to have been engaging in services of the type recited in Plaintiff's trademark registration.

The most direct insight into Mr. Kneen's intent, in the course of the discussion initiated on April 23, 2014 by Plaintiff's principal, is to consider what was objectively known to Mr. Kneen at that time.   The Plaintiff's principal further stated in that first communication:

> I am working on a new project that is going to focus on helping innovators and thought-leaders work better and to better impact the communities they serve.

> We love WorkBetter.com for this. I see the domain is listed for sale on your personal website. Can you please send me some more details on what the asking price or cost might be.

*See* Kneen Decl., at ¶¶  13 & Exh. A.

The Plaintiff's principal clearly stated that he was working on a "new project." Accordingly, there would be absolutely no reason for Mr. Kneen to belief the Plaintiff had any sort of trademark rights at the time Plaintiff contacted him.  Trademark rights, in the UK as well as the US, derive from actual use of a mark on or in connection with goods or service in actual commerce, and not from "working on a new project."   Accordingly, in the ensuing discussion with the Plaintiff, Mr. Kneen could not have been motivated to respond to the Plaintiff's

solicitation based on any a "bad faith intent: to profit from non-existent trademark rights in a "new project."

Moreover, it is worth comparing the Plaintiff's claim to Mr. Kneen that the "new project" was going to "focus on helping innovators and thought-leaders work better and to better impact the communities they serve" with the services recited in the Plaintiff's trademark application, filed two days later on April 25, 2014.  In contrast to the Plaintiff's vague representation made to Mr. Kneen, the Plaintiff's filing two days later averred an intent-to-use WORK BETTER for

> Advertising and marketing; Business administration and management; Business administration and office work; Business administration assistance; Business administration services; Business assistance, management and information services; Business networking; Business operation, business administration and office functions; Commercial business management; Computerised office management; Mail sorting, handling and receiving; Management of telephone call centers for others; Office administration services; Operational business assistance to enterprises; Organizational services for business purposes; Providing business support staff services; Providing office functions; Providing office support staff services; Telephone answering service.

What any of this laundry list of administrative services has to do with "helping innovators and thought-leaders work better and to better impact the communities they serve" may be something of a mystery, but the Plaintiff's description of the purpose for which it wanted the domain name was to help certain people "work better" -- a non-trademark use of a descriptive phrase in its ordinary meaning.  The Plaintiff's principal ascribed no secondary meaning of the phrase "work better" when using it in a descriptive sense to convey the purpose for which the Plaintiff was seeking to buy the domain name.

By the Plaintiff's own representation to Mr. Kneen that it wanted the domain name to help people "work better," the Plaintiff made a direct admission that it did not want the domain name for any trademark-relevant purpose at all, but wanted a domain name corresponding to the primary, dictionary meaning of the Plaintiff's own description of its supposed "new project" to help others "work better."   Contrary to the Plaintiff's allegation that Mr. Kneen possessed a bad

faith intent to profit by usurping the trademark of another, Mr. Kneen had every reason to believe the Plaintiff was seeking a merely descriptive domain name for use in accordance with its expressly-stated descriptive primary meaning, and not a distinctive mark at all for Plaintiff's expressed purposes.

Furthermore, although a UK citizen has no duty of notice in relation to US registered trademarks, there was no trademark registration application filed by the Plaintiff, much less any mark registered to the Plaintiff, when the initial solicitation was made by the Plaintiff on April 23, 2014.   The Plaintiff, who urges the timing of its rights to be counted as of the filing date of its application, would not file the application until two days later on April 25, 2014.   It would be absurd to then conclude that Mr. Kneen's "good faith" conversation on April 23 with a party claiming no trademark rights, somehow became a "bad faith intent" two days later, on the basis of actions wholly undertaken by the Plaintiff without any notice or knowledge thereof by Mr. Kneen. Mr. Kneen merely carried on the conversation until losing interest and not further responding to the Plaintiff when the Plaintiff agreed, in the final communication between the parties that a sale would be "unlikely."

The sole "bad faith" act alleged by the Plaintiff is an unspecified "update" or "re-registration" of the domain name upon payment of the regular annual fee by automatic credit card payment conducted by the registrar in February 2015.   Here again, the payment of the fee by automated payment, based on previously-supplied payment information by Mr. Kneen, involved no volitional or willful act by Mr. Kneen at all.   *See* Kneen Decl., at ¶ 10.

The Plaintiff's characterization of these events as "when after the Plaintiff's mark became distinctive he both requested a high price from the Plaintiff and re-registered/updated the domain" are both entirely false. *See* Plaintiff's Motion, at 8.  As the correspondence shows, Mr. Kneen never requested a "high price" from the Plaintiff, and the conversation concluded with

Mr. Kneen simply losing interest.    Likewise, Mr. Kneen engaged in no "re-registration" or "update" of the domain name in February 2015.

The simple facts shown in the correspondence between the parties is that the Plaintiff approached Mr. Kneen soliciting the purchase of the domain name workbetter.com for a "new project" to help people "work better," in the Plaintiff's own words. Two days after this approach, the Plaintiff filed an intent-to-use registration application, for a variety of business administration services, completely unknown to Mr. Kneen and without making any sort of claim or notice of such intent-to-use to Mr. Kneen.    The conversation ended, as Mr. Kneen simply walked away for lack of interest.

### 3.      The Balance Of Hardships Weighs in Mr. Kneen's Favor

The "hardship" faced by the Plaintiff in the absence of the proposed injunction is non-existent.  The domain name has remained registered to Mr. Kneen at the same registrar for years prior to this action, and for more than one year since the Plaintiff first contacted Mr. Kneen to discuss the domain name.   If Mr. Kneen were inclined to hide or obscure his registration of the domain name, or to spirit it away, he has had more than a year to do so.  In point of fact, the only party which has attempted to alter the registration status of the domain name has been the Plaintiff, when it issued an unauthorized transfer request for the domain name, discussed in detail below.   The Plaintiff claims, on the basis of nothing at all, a belief that Mr. Kneen is prone to engage in "cyberflight" - a practice of changing registrant and/or registrar information in order to frustrate legal proceedings.   To the contrary, Mr. Kneen has appeared here to engage this legal proceeding, to assert lack of jurisdiction over him and, alternatively, a lack of substantive basis for the Plaintiff's claims.

The hardships faced by Mr. Kneen in the event the proposed injunction is entered are twofold.  First, the dubious merit of this action has attracted the attention of the "blogosphere" -

the collection of subject-relevant online journals which follow subjects of specialized interest. This action was first reported on June 29, 2015 by *Domain Name Wire,* an online journal of domain name news, under the headline "Cybersquatting lawsuit filed over domain name registered 16 years before plaintiff's use" at <http://domainnamewire.com/2015/06/29/cybersquatting-lawsuit-workbetter/>. Mr. Kneen has also been contacted for comment by a reporter for *TechCrunch,* a technology journal of considerable repute, inquiring about these proceedings. The entry of an entirely unnecessary and superfluous order against Mr. Kneen is likely to be reported by such primarily technical and business oriented journals, as a determination that Mr. Kneen has engaged in some sort of wrongdoing, and thus has a substantial likelihood of damaging his reputation in the technical community, for no good purpose.

Secondly, Mr. Kneen's registration of the domain name entitles him to the full enjoyment of the benefits thereof. The Plaintiff seeks an order bearing on a third party to this case - the domain registrar with whom Mr. Kneen enjoys the domain registration contract. Impairment of the domain registration contract, by inducing the registrar to restrict a domain name registrant's rights under the domain registration contract, such as by "locking" preventing updates, and other suspension of services ordinarily available, is a form of contractual interference harm recognized in *Goforit Entertainment LLC v. Digimedia.com LP*, 750 F.Supp.2d 712 (N.D. Tex. 2010), in which an ACPA claimant similarly sought "locking" and suspension of related registrar services incident to pursuit of the ACPA claim:

> The court holds that a reasonable jury could find that GEL interfered with the contract between Tucows and defendants. It is undisputed that GEL sent Tucows a letter requesting a registration lock on defendants' domain names. It is also uncontested that GEL intended that the letter result in the suspension of defendants' services and that, shortly after GEL made the request, Tucows complied. A reasonable jury could thus find that GEL interfered with the performance of services outlined in defendants' contract with Tucows . . . Even if Tucows acted within the terms of the contract in locking the domain names, it caused the performance of the contract to be "of less or no value" to

19

defendants. A reasonable jury could find that defendants incurred legal costs in convincing Tucows to unlock its domain names and incurred higher domain hosting expenses because they could not switch to a cheaper hosting company during the registration lock.

*Goforit Entertainment*, 750 F.Supp.2d at 723. Compliance with such demands or orders imposes a cost on the non-party registrar as well, which must review such documents and make judgments as to whether and how to implement them. Domain registrars are technical service providers in a low-margin business, not legal scholars. The increased cost of doing business with Mr. Kneen incurred by issuance of an order on the non-party registrar here, for which the Plaintiff has given no tangible rationale, may unfavorably dispose the registrar to consider Mr. Kneen a "problem customer" and disincline the registrar to continue to transact with him on favorable terms.

Accordingly, while the Plaintiff gains nothing by issuance of the proposed order but to assuage the Plaintiff's unfounded apprehensions, Mr. Kneen will incur reputational harm with the public and his peers in the technical community, reputational harm with the affected registrar, and impairment of his rights under the domain registration contract.

### D.    Plaintiff Comes To This Court With Unclean Hands

An additional consideration in the Plaintiff's pursuit of equitable relief here, is apparent fraud in its representations to this court, its dealings with Mr. Kneen, fraud in the procurement of the trademark registration in which it here claims rights, and attempted theft of the domain name.

While the classic ACPA scenario involves the registration of a domain name junior to a trademark for the purpose of extorting a known senior trademark owner, the sequence of events present here suggests a scheme concocted by the Plaintiff to manufacture a claim of supposed "trademark rights" to assert against a known senior domain registrant for the purpose of proceeding under color of the ACPA to extort the domain name; and to elicit a purchase price

from Mr. Kneen in order to claim the domain name is being held hostage to monetary demands based in bad faith to profit from the Plaintiff's supposed trademark rights.

### 1.    Plaintiff's Representations To This Court

The Plaintiff's brief here is rife with deliberately misleading statements such as at page 2 of its Motion:

> The application for the trademark was filed by the Plaintiff on April 25, 2014, and the discussions by email between the Plaintiff and Mr. Kneen for the purchase of the domain name commenced in or around April 23, 2014.

As demonstrated by the actual transcript of the LinkedIn.com discussions between the parties, the Plaintiff initiated those discussions on April 23, 2014, prior to filing the application on April 25, 2014.   While the discussions initiated on April 23, 2014 did continue for a few days, the Plaintiff consistently and misleadingly conveyed the impression that the Plaintiff's USPTO filing preceded any discussions between the parties.  The Plaintiff is fully aware that by characterizing the trademark registration application as having been made on April 25, and the discussions to have more vaguely occurred "in May," the Plaintiff's representations are intended to misleadingly suggest that the Plaintiff was in possession of some thread of "rights" preceding the Plaintiff's overture to Mr. Kneen to solicit a purchase price for the domain name.   In fact, the actual timing of events demonstrates that the Plaintiff's approach to Mr. Kneen was merely a ruse for the purpose of eliciting a sale proposal, which the Plaintiff would then have characterized as a ransom demand in as a premise for an ACPA claim.

### 2.    Timing Of Plaintiff's Registration Application After Having Contacted Mr. Kneen

Fundamental to the Plaintiff's claim is that it possesses substantive trademark rights at all.   The Plaintiff relies solely on the administrative acts of the USPTO in processing its registration application, but the Plaintiff is utterly silent on just how it uses the alleged mark, where it uses the alleged mark, what is the extent of its advertising expenditures, number of

customers, consumer recognition and volume of business conducted or revenue earned under the supposed "use" of the alleged mark. The reason for the Plaintiff's silence is that, contrary to representations made in *ex parte* prosecution of its application before the USPTO, the Plaintiff does not appear to be using the mark in commerce for the recited services.

First, upon filing its registration application two days after contacting Mr. Kneen, the Plaintiff filed its application and declared an oath under 18 USC §1001 shown in Exhibit C as:

> The signatory believes that to the best of the signatory's knowledge and belief, no other person has the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or mistake, or to deceive. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true. (Emphasis Added).

There is no question that two days before swearing this oath, the Plaintiff was fully aware that the domain name workbetter.com was registered and used by Mr. Kneen for his own purposes, and yet the Plaintiff's oath avers ignorance of any other party using the term.

The timing of the Plaintiff's USPTO intent-to-use application strongly suggests the filing to have been motivated by covetousness of Mr. Kneen's domain name, known at that time to the Plaintiff, and not a spontaneously-arising intent to use a trademark at some indefinite time in the future.

3.    **Plaintiff's "First Use" and "Use In Commerce" Allegations**

The Plaintiff's "First Use" and "Use In Commerce" allegations made in its application also appear to be informed more by the Plaintiff's contact with Mr. Kneen, and payment of the annual fee in February 2015.

In order to obtain registration of a mark based on an intent-to-use application, it is ultimately necessary to demonstrate actual commercial use of the mark in commerce in the

United States in connection with the sale of the goods and/or services recited in the application. The "use in commerce" requirement is satisfied by the submission of a sworn "Statement of Use" showing a specimen of how the mark is used on or in connection with sale of the goods and/or services, and the dates of first use in commerce thereof.   The Plaintiff's sworn "Statement of Use" and specimen, submitted to the USPTO on March 9, 2015, are shown in Exhibit C hereto. As can be seen therein, the Plaintiff's claims it has submitted "one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting of a(n) Services identified by mark in print" and the Plaintiff claims a "first use" date of April 1, 2014.   However, close inspection of the so-called "specimen" shows that it bears an email address of "inquiries@workbetter.us," and a footer notation of "www.workbetter.us."

Attached hereto as Exhibit D is the domain registration data for the Plaintiff's "workbetter.us" domain name.   As can be seen therein, the domain creation date is April 29, 2014 - four days after the application was filed and six days after initiating contact with Mr. Kneen.   It is thus not possible for the Plaintiff to have been using the alleged mark in any manner shown in connection with the Specimen as of the claimed "first use" date of April 1, 2014.   While any number of unusual events are customarily associated with the first of April, claiming use of an internet domain name 28 days before its own registration as a domain name, is not likely to fool many.  Remarkably, although having filed the intent-to-use application on April 25, 2014, after contacting Mr. Kneen, the Plaintiff appears to have "remembered," a year later, having first used the alleged mark prior to having contacted Mr. Kneen and prior to filing its intent-to-use application.

There appears to be no actual commerce conducted by the Plaintiff at the indicated site of www.workbetter.us. The actual website at that location differs remarkably from the Specimen submitted to the USPTO, and a print-out of it as of July 2, 2015 is attached Exhibit E.  As can be

seen therein, there are no links to any other page, there is nothing offered for sale, and the page bears the notation:

> We enable entrepreneurs and positive change-makers to work better. Very soon we will unveil even more.

> In the meantime, sign up for updates below and meet some of our members.

First, the mere promise of future service offerings and an invitation to receive "updates" and "meet some of our members" is not an offering of anything in commerce, and certainly not the fulsome roster of recited services in the Plaintiff's vaunted federal trademark registration.

Second, the Plaintiff's website itself uses the term "work better" in its ordinary descriptive sense, claiming to help others "work better." The Plaintiff's own descriptive use of the term which Plaintiff alleges to be a distinctive mark is an effective admission of descriptiveness in that the Plaintiff's services are stated by the Plaintiff to enable others to "work better" according to the plain and primary meaning of the phrase. *See, e.g., Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) (finding the alleged mark "Seal it with a Kiss" to be merely descriptively used where lipstick testers were to kiss a postcard wearing the lipstick and then send it to a loved one.)

Accordingly, the Plaintiff's "Use In Commerce" allegation, filed March 2015 in the application, like the "first use" allegation, appears to remarkably coincide with just prior to what the Plaintiff mistakenly believes to have been the automatic fee payment for Mr. Kneen's domain registration. While the "expiration date: of the domain name is annually set to February 20th, inspection of the WHOIS records shown in Exhibit A shows the payment to have been carried out by the registrar on February 7, 2015. This apparent error by the Plaintiff in backdating its "first use in commerce" allegation, still leaves the Plaintiff's alleged use in commerce to be four days junior to the date which the Plaintiff here claims to have been a "re-

registration" of the domain name after Plaintiff's claimed acquisition of distinctiveness based on use in commerce on February 11, 2015.

Every data point associated with the Plaintiff's trademark registration application appears to have been deliberately undertaken by the Plaintiff after contact with Mr. Kneen and after payment of the annual domain maintenance fee, and then backdated by allegations of "first use" (April 1, 2014) and "use in commerce" (February 11, 2015) submitted by the Plaintiff in March 2015 to allege dates of supposed activities of the Plaintiff prior to contacting Mr. Kneen (April 23, 2014) and prior to automated payment of the annual fee by the registrar (due by February 20, 2014 but actually paid on February 7, 2014).  In the meantime, the Plaintiff's website does not suggest the conduct of any commerce at all, and the Plaintiff's entire filing here is absent any usual indicia of actual use of a mark, volume of business, etc., by which a trademark claimant would be expected to show underlying actual use of a mark in support of a federal registration. The Plaintiff instead advances an empty "paper claim" of registration with the USPTO unsupported by any hint of actual use of any mark in any commerce whatsoever.

Based on the foregoing, Mr. Kneen submits there is a strong indication of fraud in prosecution of the Plaintiff's trademark registration application, undertaken for the apparent purpose of constructing the claim it has rushed into this court to assert on the basis of its US registration ultimately issued a few weeks ago.

4.      **Attempted Theft Of The Domain Name By Plaintiff**

While the Plaintiff has rushed into this court alleging concern that the sixteen years of undisturbed registration of the domain name to Mr. Kneen, and which he continued to forward to his online journal is in some imminent danger of changing, the only threat to the status of the domain name, in this sixteen year history, occurred when the Plaintiff itself issued an unauthorized transfer request to hijack the domain name to the Plaintiff at a different registrar.

On June 25, 2014, Mr. Kneen received an email from an internet registrar other than Enom.com, that a request had been received to transfer the domain name away from his control at Enom.com to a new registrar, stating "pairNIC has received a request from Harsh Mehta on Tue Jun 24 19:28:30 2014 for us to become the new registrar of record." *See* Kneen Decl, at ¶15.   At no time had Mr. Kneen given Plaintiff authorization to submit a registrar transfer request, and the submission of such a transfer request to a registrar requires the requester to affirm that the requestor is authorized to do so.   Alarmed, Mr. Kneen notified Mr. Mehta, Plaintiff's principal, via LinkedIn.com, and publicly tweeted an alert of the attempted theft to the registrar and to Mr. Mehta. *See id.*, at ¶¶16-17.   At that time, the Plaintiff made a vague claim of "mistake" and apologized for the alleged error.   Pointedly, the Plaintiff, during this renewed spate of communication, made no claim of right or entitlement to Mr. Kneen and, as implied by the Plaintiff's initial contact with him, implicitly acknowledged Mr. Kneen to be the rightful registrant.

In view of having now been apprised of the full scope of the Plaintiff's activities in the USPTO being conducted in parallel with the original contact between the parties without any notice or claim thereof and without Mr. Kneen's knowledge, he is less inclined to accept the Plaintiff's explanation of alleged unspecified "error" in having submitted the unauthorized transfer request, and which now appears to be part of a much larger scheme of fraud by the Plaintiff in its pursuit of the disputed domain name.

### III.   CONCLUSION

For the foregoing reasons, Mr. Kneen submits that Plaintiff's Motion for a Preliminary Injunction binding on him and against the non-party domain registrar should be denied.   The Plaintiff has not demonstrated a probable basis for personal jurisdiction Mr. Kneen in this matter, and nothing herein constitutes a waiver of Mr. Kneen's claim of lack of jurisdiction.   In the

alternative, Mr. Kneen submits that the Plaintiff has not made a showing of irreparable harm in the absence of the injunction sought by Plaintiff; that the balance of hardships weighs in favor of Mr. Kneen; and that the Plaintiff's likelihood of prevailing on the merits is vanishingly small. Finally, Mr. Kneen submits that the Plaintiff is barred from the relief sought by the equitable doctrine of unclean hands on the basis of the Plaintiff's representations made here, evident fraud in prosecution of the trademark registration which is the sole basis of the Plaintiff's assertion of rights; and Plaintiff's conduct in attempting to obtain extra-judicial relief by unauthorized transfer of Mr. Kneen's duly and lawfully registered domain name.

Dated: New York, New York            BERNSTEIN IP
       July 2, 2015


                                     By /s Karen J. Bernstein
                                        Karen J. Bernstein (KB 6753)
                                        Attorney for Plaintiff
                                        200 Park Avenue, Suite 1700
                                        New York, New York 10166
                                        (212) 339-9955

27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is the attorney for Defendant in the above-captioned action and that on the date which appears below, served copies of the foregoing MEMORANDUM OF DEFENDANT JASON KNEEN IN OPPOSITION TO PLAINTIFF OFFICE SPACE SOLUTIONS, INC.'S MOTION FOR PRELIMINARY INJUNCTION by causing copies thereof to be served via e-mail and Federal Express to the following:

> John P. Bostany, Esq.
> Roman Popov, Esq.
> Bostany Law Firm, PLLC
> 40 Wall Street, 28th Floor
> New York, NY 10005
> E-Mail: mail@bozlaw.com

Dated: July 2, 2015                                    /s/ Karen J. Bernstein_____
                                                                Karen J. Bernstein

28