2012 WL 121105
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Christopher PHOENIX–DOLEZAL, Plaintiff,
v.
LILI NI, Defendant.

No. 11 Civ. 3722(LAK)(JLC).   |   Jan. 17, 2012.

### REPORT AND RECOMMENDATION

JAMES L. COTT, United States Magistrate Judge.

*1 **To The Honorable Lewis A Kaplan, United States District Judge:**
Plaintiff Christopher Phoenix–Dolezal ("Phoenix") has brought this action under the Anticybersquatting Consumer Protection Act (the "Act"), 15 U.S.C. § 1125(d), seeking the transfer of the domain name "phoenix.tv," which is currently owned by defendant Lili Wang ("Wang"), Phoenix alleges that "phoenix.tv" is substantially similar to Phoenix TV, a mark he owns whose approval is currently pending before the United States Patent and Trademark Office, and that Wang is a "cybersquatter" who had no productive use for the domain name when she registered it and has refused to sell it to him with a "bad faith intent to profit," in violation of the Act, 15 U.S.C. § 1125(d)(1). Proceeding *pro se,* Wang denies the allegations and has moved to dismiss the complaint for lack of personal jurisdiction, improper venue, insufficient service of process, and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that the Complaint be dismissed for lack of personal jurisdiction.

### I. *Background*

#### A. *The Complaint*
Phoenix is a citizen of the State of New York with his principal place of business in New York City. Complaint dated May 5, 2011 ("Complaint"), ¶ 6 (Doc. No. 1). He describes himself as the principal of a broadcast television production company called Phoenix Media Group, Inc. which, by dint of its name and its business, has an interest in the domain name at issue in this lawsuit: "phoenix.tv." *Id.* ¶¶ 10, 11. Through his suit, he seeks the transfer of "phoenix.tv," which is currently owned by Wang. *Id.* ¶ 9.[1] He alleges that "phoenix.tv" is "substantively similar" to a mark—Phoenix TV—which he owns and uses in commerce, and which is currently pending approval before the United States Patent and Trademark Office. *Id.*

Phoenix alleges that on or about December 9, 2009, he contacted Wang by email to express interest in the purchase of "phoenix.tv" because it was virtually identical to his mark. *Id.* ¶ 10. Wang, a citizen of the State of California, allegedly responded by email on December 15, 2009 through a person identified as "George" that the domain name was a "premium.tv name" and her website was "under construction" and would be "in production soon." *Id.* ¶ 12. Consequently, Phoenix alleges that Wang (through her agent) advised him that she would only sell the domain name for $2 million dollars. *Id.*; Exhibit B to Complaint (Doc. No. 1–2). Phoenix further alleges that "similar 'premium' domain names from [a] reputable ... domain name and web hosting service, are available in the range of $5,000 to $8,000 dollars." Complaint, ¶ 12.

At the time Phoenix made his inquiry to Wang, he alleges that the website had "never been used whatsoever by the defendant[,]" and that as of the date of the Complaint—May 5, 2011—the web address "phoenix.tv" directs viewers "to a server which does not appear to be in use." *Id.* ¶ 13; Exhibit C to Complaint (Doc. No. 1–3). Phoenix thus concludes that Wang has not used the domain name in commerce and has no apparent intent to do so since the site has been under construction for two years if not longer. Complaint, ¶ 14. Accordingly, he alleges that Wang registered the domain name in bad faith in order to profit by cybersquatting, in violation of the Act, and seeks an order transferring the domain name from Wang to him. *Id.* ¶¶ 17, 18.

#### B. *Wang's Response to the Complaint*
*2 In response to the Complaint, Wang simultaneously filed an Answer and three separate motions to dismiss.[2] In her Answer, she denied that Phoenix was entitled to a declaratory judgment that transfers ownership of "phoenix.tv" to him. Answer dated July 18, 2011 ("Answer"), ¶ 2 (Doc. No. 9). She alleges that she registered the domain name in 2006 and that Phoenix's business did not exist at the time of the registration. *Id.* ¶ 8. In denying any wrongdoing, Wang contends that she built an active website after registering the domain name, and "[a] better website is now being developed." ML Wang avers

that it was not until after Phoenix threatened her with a lawsuit on April 11, 2011 that he filed a trademark application for Phoenix TV with the U.S. Patent and Trademark Office. *Id.* ¶ 9; Exhibit A to Complaint (Application for Phoenix TV Trademark dated April 13, 2011). Further, Wang denies that she intended to profit in bad faith by seeking a multi-million dollar payment for the domain name; rather, she contends that she had no interest in selling the domain name to Phoenix, and chose not to reply to further email requests from him seeking the sale of the name. Answer, ¶ 12.

In her Answer, Wang asserted a number of defenses, including failure to state a claim upon which relief can be granted (First Defense) (¶ 19), lack of personal jurisdiction (Third Defense) (¶ 21), improper venue (Fourth Defense) (¶ 22), and insufficient service of process (Sixth Defense) (¶ 24). She separately filed three motions to dismiss the Complaint, all dated July 18, 2011, on the same grounds as these defenses. *See* Doc. Nos. 13, 14, 15.

In her first motion, Wang argues that the Complaint should be dismissed for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and (b)(3). Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue dated July 18, 2011 ("Jurisdiction and Venue Motion") (Doc. No. 13). She contends that she is not a resident of New York, never had any business in New York, and never sought business in New York. *Id.* at 1. Moreover, she argues that her only contact with New York was in reply to an email that Phoenix had sent to her before the lawsuit was filed or even threatened, and that she did not reply to further emails from Phoenix. *Id.* Accordingly, Wang contends that she has not had the "minimum contacts" with New York necessary to establish personal jurisdiction. *Id.* Moreover, she claims that it would be unreasonable for her to be expected to travel to New York to defend herself in the litigation, and that it would "not only [be] hard" for her financially but it would "significantly affect" her employment. *Id.* Further, citing to the Act, 15 U.S.C. § 1125(d)(2), Wang contends that the Court lacks venue because the "domain name registrar, domain name registry, and other domain name authority that registered or assigned that domain" is not located in New York; rather, she registered the domain name with The .tv Corporation in California. *Id.* at 1–2.

*3 In her second motion, Wang argues that the complaint should be dismissed because she was improperly served pursuant to Rule 12(b)(5). Motion to Dismiss for Improper Service of Process dated July 18, 2011 ("Service Motion") (Doc. No. 14). She avers that she was served by email on June 29, 2011, with the summons and complaint attached. *Id.* at 1; Exhibit C to Service Motion.[3] Wang argues that email is not an acceptable form of service pursuant to Rule 4 of the Federal Rules of Civil Procedure. Service Motion at 1. She further asserts that Phoenix did not provide her with any court order permitting service in this fashion. *Id.*

In her third motion, Wang argues that the complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Motion to Dismiss for Failure to State a Claim dated July 18, 2011 ("Claim Failure Motion") (Doc. No. 15). She contends that she registered the domain name in California, and therefore there could be no violation of the Act, which requires that any lawsuit alleging cybersquatting be brought in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered the domain name is located. *Id.* at 1 (citing 15 U.S.C. § 1125(d)(2)). In addition, she argues that she has not taken any action that violates any of Phoenix's rights under the Act. *Id.*

### C. *Phoenix's Opposition to the Motions*
In opposition to the motions, Phoenix filed only a short attorney affirmation. Affirmation in Oppostion [sic] to Motions to Dismiss dated September 2, 2011 ("Affirmation") (Doc. No. 23).[4] With respect to the Jurisdiction and Venue Motion, Phoenix contends only that he has spent significant time establishing his company in New York, conducts the vast majority of his business in New York, and that all of the "myriad communications" between Phoenix and Wang were either to or from New York. Affirmation, ¶¶ 11–15.[5] In addition, he claims venue is proper because all of the communications and events related to the lawsuit occurred in New York. *Id.* ¶ 14. With respect to the Service Motion, Phoenix contends that because he could not locate a physical address for Wang, he sought and obtained permission from the Court to serve the Complaint by email and certified mail. *Id.* ¶¶ 4–5. Accordingly, he claims that service was effectuated as authorized by the Court and was therefore proper. *Id.* ¶ 7. Finally, with respect to the Claim Failure Motion, Phoenix contends that his allegation that Wang "engaged in a pattern of bad faith with intent to profit" in her ownership of "phoenix.tv" states a claim under the Act. *Id.* ¶ 21.[6]

### II. *Discussion*

**A. *Timing of Rule 12(b) Motions***

Rule 12(b) of the Federal Rules of Civil Procedure provides that if a party decides to raise any of the seven enumerated defenses by motion—such as the defenses that Wang has raised here-they "must be made before pleading if a responsive pleading is allowed." In the usual case, "[i]f [a] defendant decides to assert a Rule 12(b) defense by motion, then [the defendant] must do so before filing the answer." 5C Charles Alan Wright *et al, Federal Practice and Procedure* § 1361, at 92 (3d ed.2004). However, it is well-settled that "should the defendant file a Rule 12(b) motion simultaneously with the answer, the district court will view the motion as having preceded the answer and thus as having been interposed in timely fashion." *Id*. at 92–93, & n. 6 (collecting cases). In addition, courts have allowed otherwise untimely motions if the defense had been included in the answer. *Id*. at 93–94, & n. 7 (collecting cases).

**\*4** In this case, Wang's motions asserting various Rule 12(b) defenses are timely. First, the record demonstrates that she filed her motions simultaneously with her answer. Her cover letter to the Pro Se Office makes plain that she sent both her answer and her motions at the same time. *See supra* at 3, n. 2. In addition, all of the defenses that form the bases for her motions were specifically asserted as defenses in her answer. Finally, Wang is proceeding *pro se* and used court-issued forms for her motions that did not advise her that she should have filed any motions to dismiss in lieu of an answer. Accordingly, the Court turns to the merits of her motions.

**B. *Applicable Legal Standards***

Where, as here, a defendant moves for dismissal under Rules 12(b) (2), (3), (5), and (6), "[b]efore addressing Defendants' Rule 12(b) (6) motion to dismiss, the Court must first address the preliminary questions of service and personal jurisdiction." *Rosario v. Cirigliano*, No. 10 Civ. 6664(RWS), 2011 WL 4063257, at \*2 (S.D.N.Y. Sept.12, 2011) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir.1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.")). In considering a motion to dismiss for lack of personal jurisdiction, a court may consider documents submitted outside the pleadings. *Id*. (citations omitted).

It is well-settled that "[i]n a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *M & M Packaging, Inc. v. Kole*, 183 F. App'x 112, 113–14 (2d Cir.2006) (summary order) (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997)).[7] A plaintiff "bears the burden of establishing that the court has personal jurisdiction over the defendant[ ]." *Id*. at 114 (citing *DiStefano v. Carozzi N .Am., Inc.*, 286 F.3d 81, 84 (2d Cir.2001)). "[W]here, as here, discovery has not begun, a plaintiff need only allege facts constituting a *prima facie* showing of personal jurisdiction" to survive a motion to dismiss made pursuant to Rule 12(b)(2). *Id*. (citing *PDK Labs, Inc.*, 103 F.3d at 1108).

Here, because the Act does not authorize nationwide service of process, the Court must look to the New York State long-arm statute, Section 302(a) of the New York Civil Practice Law and Rules ("CPLR"), when assessing whether the Court can exercise personal jurisdiction over Wang. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987) (federal court should look to a federal statute or state long-arm statute to determine defendant's amenability to service, which is a "prerequisite to its exercise of personal jurisdiction"); *Radio Computing Servs., Inc. v. Roland Computing Servs.*, No. 00 Civ.1950(GBD), 2003 WL 1107443, at \*1 (S.D.N.Y. Mar.13, 2003) (citing *PDK Labs, Inc.*, 103 F.3d at 1108).[8] If the Court finds that personal jurisdiction exists under the long-arm statute, then it must decide whether such exercise of jurisdiction comports with due process. *See Radio Computing Servs., Inc.*, 2003 WL 1107443, at \*1. As the Supreme Court has cautioned, "[i]t is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it 'reasonably anticipate being haled into court there.' " *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir.2010) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

**\*5** Finally, in considering the pending motions, the Court is mindful that Wang is proceeding *pro se*. As such, the Court will construe her submissions liberally, "applying a more flexible standard to evaluate their sufficiency" than if she were represented by counsel. *Lerman v. Bd. of Elections in City of N.Y .*, 232 F.3d 135, 139 (2d Cir.2000). Courts are required to "interpret [pro se pleadings] 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). However, the fact that Wang is proceeding *pro se* "does not exempt [her] from compliance

with relevant rules of procedural and substantive law[.]" *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983) (citation and quotation marks omitted).

### C. *Wang Was Properly Served*

As a threshold matter, Wang's challenge to the service of the summons and complaint pursuant to Rule 12(b)(5) is without merit. After Phoenix could not identify an address at which to serve Wang, the Court approved service by email and certified mail in an endorsed order dated June 28, 2011. (Doc. No. 3). Such substituted service comports with both federal and state law concerning service of process. Rule 4(e) of the Federal Rules governs service of an individual located in the United States. Rule 4(e)(1) permits a plaintiff to effectuate adequate service upon a defendant by following state law "in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" The corresponding state statute is New York CPLR § 308, which provides several methods for personal service upon an individual. CPLR § 308(5) allows for substituted service "in such manner as the court ... directs, if service [through delivery of the summons] is impracticable[.]" In Phoenix's letter requesting permission for substituted service, he alleged that Wang had previously communicated from a post office box address. While Wang disputes this allegation, *see* Reply at 1, this issue of fact is rendered moot by the Court's decision permitting Phoenix's method of service.[9] For these reasons, I recommend that Wang's motion to dismiss for insufficient service of process be denied.

### D. *The Court Lacks Personal Jurisdiction Over Wang*

Construing the Complaint and the opposition papers in the light most favorable to Phoenix, *see A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993), Phoenix has alleged that Wang committed a tortious act outside the state by cybersquatting on "phoenix.tv" that caused injury to Phoenix within the state (presumably by diluting Phoenix's "Phoenix TV" mark).[10] *See Cello Holdings, L.L.C. v. Lawrence–Dahl Cos.*, 89 F.Supp.2d 464, 470 (S.D.N.Y.2000) (trademark dilution case is "akin to a tort case") (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998)). However, Phoenix has not met his burden in establishing that the Court has personal jurisdiction over Wang.

\*6 The record before the Court reveals that Phoenix had very limited contacts with Wang, and that Wang did not take any purposeful action to conduct business in New York, or that she could reasonably have expected any action she took to have consequence in New York. All Phoenix alleges in his Complaint is that on December 9, 2009, by email, he contacted Wang to express interest in the purchase of the domain name "phoenix.tv," and that Wang (through another person) responded by email on December 15, 2009. Complaint, ¶¶ 10, 12. Phoenix asserts that in her response, Wang advised him that her website affiliated with the domain name was "under construction" and "would be in construction soon," but that she would sell the domain name to him for $2 million dollars. *Id.* ¶ 12. Phoenix does not assert in his Complaint, or in any other submission to the Court, that Wang had any other contacts with him in New York (or elsewhere), or took any action to conduct business in New York, other than the offer of a sale of the domain name for what Phoenix alleges is an "outrageous sum," and which Wang denies making. Complaint, ¶ 12; Answer, ¶ 12. Indeed, Phoenix alleges that Wang has "not used the domain name 'phoenix.tv' in commerce" in California or New York. Complaint, ¶ 14.[11] Moreover, Wang alleges—and Phoenix does not refute—that when Phoenix sent an email seeking to resolve this dispute without litigation, Wang did not even reply. Jurisdiction and Venue Motion at 1. Finally, Phoenix does not allege that Wang was aware, before she registered "phoenix.tv," of the existence of the "Phoenix TV" mark— and Wang has responded that she registered her domain name in 2006, years before Phoenix sought to register his mark. Answer, ¶ 9. *Cf. Cello Holdings,* 89 F.Supp.2d at 470 (in concluding it had personal jurisdiction over defendant under New York long-arm statute in cybersquatting case, court found defendant "certainly expected, or reasonably should have expected, his actions to have consequence in New York [,]" since he was aware of plaintiff's existence before registering his domain name and within days of registration defendant initiated contact with plaintiff in effort to sell domain name). Thus, there is nothing in the record to support a finding that Wang took any action that she should have reasonably expected would have consequences in New York, or derived substantial revenue from interstate commerce, as contemplated by New York's long-arm statute, leaving no basis on which the Court could find personal jurisdiction over Wang.

Phoenix cites only to *Sacody Technologies, Inc. v. Avant, Inc.*, 862 F.Supp. 1152, 1157 (S.D.N.Y.1994) and *Concesionaria DHM, S.A. v. International Finance Corp.*, 307 F.Supp.2d 553, 559 (S.D.N.Y.2004) in opposition to the motion to dismiss for lack of personal jurisdiction Affirmation, ¶ 13.

In *Sacody,* a diversity action for breach of a confidentiality agreement and unfair competition, Sacody, a New York corporation, sued several Massachusetts defendants, who moved to dismiss for lack of personal jurisdiction. In denying the motion, the court found that the corporate defendant and its president transacted business in New York because the president had visited Sacody's research facility where Sacody's prototype security system in which the president was interested had been demonstrated, and expressed a desire to display this prototype at trade shows (and, in fact, did display the prototype at trade shows in both the United States and Europe, returning it several times to New York for repairs). *Sacody,* 862 F.Supp. at 1153–55. As a result of this meeting, a written confidentiality agreement was prepared that included a New York choice of law provision, which was also found to be significant for purposes of jurisdiction under New York's long arm statute. *Id.* at 1156.

***7** In *Concesionaria,* an Ecuadorian borrower brought suit alleging breach of a loan agreement against certain international lenders, one with offices in Washington, D.C. and the other in Venezuela. The lenders moved to dismiss the suit filed in the Southern District of New York for improper venue (and on forum non conveniens grounds). In denying the motions, the court found that venue in New York was proper, based on the location of the contract negotiations and the site of loan disbursements. 307 F.Supp.2d at 558–61.

These cases are plainly distinguishable on their facts, as the parties in each case had far more significant contacts with New York, including negotiations, visits, contracts, and disbursements all taking place here.[12] A more helpful case is *Radio Computing Services, Inc.,* where the court, in a case brought under the Act, dismissed the complaint for lack of personal jurisdiction in circumstances very similar to those presented here. In that case, plaintiff, a New York corporation, used the trademark "RCS" and obtained registration for It in 1993. Shortly thereafter, defendant, a California resident, registered the domain name "rcs.com," under the name of his sole proprietorship. 2003 WL 1107443, at *1. Sometime in 1995, plaintiff looked to register the domain name "rcs.com" and discovered that it already belonged to defendant. *Id.* After contacting defendant and unsuccessfully attempting to convince him to relinquish rights to the domain name for a price, litigation ensued. *Id.* In dismissing the complaint for lack of personal jurisdiction, the court found that this was not a case where a defendant took "some purposeful action" that could be characterized as "conducting business" within New York. *Id.*[13] Instead, the court found that defendant had a legitimate purpose for registering the domain name, as it fit the acronym of his business, and he had never heard of plaintiff's business. *Id.* at *2. Moreover, the court found that "it was not defendant who had approached plaintiff for the purpose of *selling* the domain name for a specified price. Rather, it was plaintiff who contacted defendant repeatedly and continuously over a three month period of time making requests to *buy* the domain name." *Id.* (emphasis in original). Accordingly, the court ruled in defendant's favor because it found that plaintiff had initiated the negotiations and that defendant had registered the domain name for legitimate purposes and not to extort money from plaintiff in violation of the Act. Id Like defendant in *Radio Computing Services, Inc.,* Wang did not engage in activities in New York sufficient to bring her within the jurisdiction of this Court.[14]

Finally, since Phoenix has failed to meet his burden of establishing that the Court has personal jurisdiction over Wang, the Court "lacks power to dismiss [the c]omplaint for failure to state a claim." *Arrowsmith,* 320 F.2d at 221. Thus, the Court need not reach the Rule 12(b)(6) motion, or Wang's remaining arguments to dismiss the Complaint.

### III. *Conclusion*

**8** For the foregoing reasons, I recommend that the Court dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b) (2) of the Federal Rules of Civil Procedure.

### *PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 72. *See Thomas v. Arn,* 474 U.S. 140,

106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010). If Wang does not have access to cases cited herein that are reported on Westlaw, she should request copies from Phoenix. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

Footnotes

1    Plaintiff filed suit against Lili Ni, but has since acknowledged that the defendant is named Lili Wang, not Lili Ni. *See* Affirmation in Oppostion [sic] to Dismiss dated September 2, 2011, ¶ 1 (Doc. No. 23). *See also* Answer to the Complaint, dated July 18, 2011, ¶ 7 (Doc. No. 9).

2    The docket sheet reflects that the Answer was docketed on July 19, 2011 as Docket Number 9, while the three motions to dismiss were docketed on July 21, 2011 as Docket Numbers 13, 14, and 15. However, Wang's cover letter to the *Pro Se* Office dated July 19, 2011 makes clear that she sent the Answer as well as the three motions for filing all at the same time. *See* Doc. No. 13 at 11.

3    Wang notes that, while the email appears to be dated June 22, 2011, she did not receive it until June 29, 2011. Service Motion at 1; Exhibit C to Service Motion. This would make sense, since the Court did not approve the service by email (and first class mail) until June 28, 2011. *See* Endorsed Letter to Hon. Lewis A. Kaplan from Gregory Koerner, Esq. dated June 23, 2011 (Doc. No. 3).

4    This submission failed to comply with Local Civil Rule 7.1, as Phoenix did not submit a memorandum of law in opposition to the motions.

5    In her Reply, Wang contends that she "only replied [to] one email [from] Plaintiff" and therefore it is inaccurate to suggest that there have been "myriad communications" between the parties. Reply Affirmation in Support of Motion dated October 27, 2011 ("Reply"), at 2 (Doc. No. 21).

6    In her Reply, Wang challenges several statements in the Affirmation, contending that she used the domain name both before and after Phoenix contacted her, that Phoenix does not own the mark "Phoenix TV," and that he only filed his trademark application two days after he threatened to file a lawsuit against her. Reply at 3.

7    In his Complaint, Phoenix claims the Court has both diversity and federal question jurisdiction under 28 U.S.C. §§ 1331 and 1332. Complaint, ¶ 3. In his affirmation in opposition to the motion, he cites to the federal venue provision related solely to diversity jurisdiction. Affirmation, ¶ 9 (citing 28 U.S.C. 1391(a)(2)). However, Phoenix's only cause of action is brought under the Anticybersquatting Consumer Protection Act, a federal law, thus making jurisdiction predicated solely on 28 U.S.C. § 1331. For personal jurisdiction purposes, the longarm statute would apply whether jurisdiction was predicated on federal question or diversity. *See Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 27 (2d Cir.1997) ("In diversity or federal question cases the court must look first to the long arm statute of the forum state[.]") (citation omitted).

8    Section 302(a) of the CPLR provides in relevant part that:

> a court may exercise personal jurisdiction over any non-domiciliary ... who ... commits a tortious act without the state causing injury to person or property within the state ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international eommerce[.]

N.Y. C.P.L.R. 302(a)(3)(H) (McKinney 2008).

9    Had Phoenix provided Wang with the Court's order regarding substituted service at the time of service-which apparently he did not do, *see* Service Motion at 1—this would likely have obviated Wang's 12(b)(5) motion.

10    Phoenix does not cite to the New York long-arm statute in his opposition papers, or address the jurisdictional issue with any specificity. Indeed, he devotes merely seven paragraphs in his response to the Jurisdiction and Venue Motion, and only makes one reference to Wang without explaining how the Court has personal jurisdiction over her. Opposition, ¶¶ 9–15.

11    While not relevant for purposes of the Court's resolution of the personal jurisdiction issue, the Court notes that a recent internet search reveals that the "phoenix.tv" website appears to be up and running, contrary to the allegations Phoenix has asserted in his Complaint. *See* http://www.phoenix.tv (last visited January 13, 2012); *Muller–Paisner v. TIAA,* 289 F. App'x 461, 466 n. 5 (2d Cir.2008) (summary order) (taking judicial notice of website publication). Moreover, the fact that the website is accessible in New York does not, in itself, create a basis for personal jurisdiction over Wang. *See Bensusan Restaurant Corp.,* 126 F.3d at 29 ("the authorization and creation of ... [a] web site .... does not establish a tortious act in the state of New York within the meaning of [the New York long arm statute]"); *see also Johnson v. Arden,* 614 F.3d 785, 797–98 (8th Cir.2010) (Colorado defendant not subject to personal jurisdiction in Missouri for claim that she used trademark on website where only contact with Missouri was a website accessible there).

12    Moreover, Phoenix quotes from the section of the court's decision in *Sacody* that discusses venue, 862 F.Supp. at 1157, not personal jurisdiction, *id.* at 1154–56, thus making it distinguishable on that basis alone. In *Concesionaria,* the court was not even presented with a motion to dismiss for lack of personal jurisdiction (just improper venue).

13   The Court in *Radio Computing Services* applied CPLR section 302(a)(1), which allows a court to assert personal jurisdiction over a person "who ... transacts any business within the state[,]" in addition to section 302(a)(3)(ii). Under either provision, Phoenix cannot establish personal jurisdiction over Wang.

14   Since I recommend that the Court dismiss the case because personal jurisdiction does not exist under the New York long-arm statute, the Court need not reach the due process requirement for personal jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *See, e.g., Girl Scouts of the United States v. Steir*, 102 F. App'x 217, 220–21 (2d Cir.2004) (summary order). Should it choose to do so, I recommend that the Court conclude that Phoenix has failed to establish that Wang had "minimum contacts" with New York (or that she could reasonably have foreseen being "haled into court" here) for essentially the same reasons that he cannot establish long-arm jurisdiction. Given the totality of the circumstances here, including the burden the exercise of jurisdiction would impose on Wang, the assertion of jurisdiction would not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (citation and quotation marks omitted).

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.