2013 WL 1700929
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

MELODRAMA PUBLISHING, LLC, Plaintiff,
v.
Danielle SANTIAGO, Defendant.

No. 12 Civ. 7830(JSR).   |   April 11, 2013.

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

*1 Plaintiff Melodrama Publishing, LLC ("Melodrama"), a book publisher, brings this action against defendant Danielle Santiago under the Lanham Act seeking a declaratory judgment of cancellation of a trademark registration, damages for fraudulent registration of a trademark, attorney's fees, and a permanent injunction. Melodrama alleges that Santiago fraudulently registered the trade name "Nisa Santiago," which Melodrama previously used in commerce in connection with the promotion and sale of a series of novels, and which Santiago has never used in commerce and does not own. Melodrama further alleges that Santiago and her former counsel, Jeffrey M. Wooten, Esq., of Wooten & Walker PC, used this fraudulent registration to threaten baseless litigation against Melodrama and to disrupt Melodrama's relationships with its distributors. Santiago has filed an answer to Melodrama's complaint, in which she has admitted certain crucial allegations against her, including that she has never used the mark "Nisa Santiago" in commerce. Melodrama now moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Upon consideration, the Court hereby grants the motion in its entirety and refers the case to Magistrate Judge for a damages inquest.

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for failure to state a claim." *Cleveland v. Caplaw Enterprises,* 448 F.3d 518, 521 (2d Cir.2006). "In a challenge under Rule 12(c), the Court must accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor." *In re Bakery & Confectionery Union & Indus. Int'l Pension Fund Pension Plan,* 865 F.Supp.2d 469, 471 (S.D.N.Y.2012). "Judgment is appropriate if, based on the pleadings, the moving party is entitled to judgment as a matter of law." *Chevron Corp. v. Salazar,* 807 F.Supp.2d 189, 194 (S.D.N.Y.2011).

The facts alleged in the complaint and admitted in the answer, taken in the light most favorable to Santiago, are as follows. The course of dealings between Melodrama and Santiago began in June 2007, when the parties began negotiating a publishing agreement. Compl. ¶ 7; Ans. ¶ 7. In July 2007, the parties signed two contracts providing for Santiago to write two novels, *Cartier Cartel* and *Cartier Cartel—The Sequel,* which were to be published by Melodrama under the pseudonym "Nisa Santiago." Compl. ¶ 11; Ans. ¶ 11. The parties dispute which side came up with this pseudonym. Compl. ¶ 12; Ans. ¶¶ 12, 112. In any event, the parties agreed that Santiago would receive royalties and an advance of $5,000, with half due upon execution of the contracts and the other half due upon delivery of the manuscripts to Melodrama. Compl. ¶ 11; Ans. ¶ 11. Importantly, paragraph 31 of the each of the contracts provides that nothing therein "shall give [Santiago] any right in or to any trademark, trade name, logo, imprint or other identification now or hereafter used by publisher, nor shall [Santiago] use any such identification during the term of this agreement or thereafter." Compl. ¶ 75; Ans. ¶ 75.

*2 The contracts obligated Santiago to send a complete draft of the manuscript for the first novel to Melodrama by April 1, 2008. Compl. ¶ 14; Ans. ¶ 14. Santiago, however, failed to deliver a full manuscript by that date, or any time thereafter, Compl. ¶ 16; Ans. ¶ 16, although Santiago alleges that she did send Melodrama "at least two full written chapters, and a synopsis of the stories and characters." *Id.* ¶ 113. In any event, on August 7, 2008, Melodrama terminated the publishing agreements and demanded repayment of the $2,500 advance. Compl. ¶ 16; Ans. ¶ 16. Santiago acknowledged the termination of the agreements and repaid the advance on October 17, 2008. Compl. ¶ 17; Ans. ¶ 17.

Several months later, in April 2009, Melodrama published a novel entitled *Cartier Cartel* under the pseudonym "Nisa Santiago." Compl. ¶ 22; Ans. ¶ 22. Since then, Melodrama has published *Return of the Cartier Cartel* and five additional titles under the same pseudonym, the most recent of which was published in 2012. Compl. ¶¶ 23–24; Ans. ¶¶ 23–24. These novels were written by third-party ghostwriters, although Santiago alleges that her draft chapters and synopsis were "used in [Melodrama's] creation of the 'Cartier Cartel' series of novels." Compl. ¶ 39; Ans. ¶¶ 39, 113. Santiago also

alleges that she "participated in the creation and selection of the cover art that was used for the novel 'Cartier Cartel.' " *Id.* ¶ 114.

On May 11, 2011, Santiago commenced an action against Melodrama in this Court, *Santiago v. Melodrama Publishing, LLC,* No. 11 Civ. 3180(JSR), alleging copyright infringement and related claims arising from Melodrama's publication of *Cartier Cartel* and *Return of the Cartier Cartel.* Compl. ¶ 26; Ans. ¶ 26. In that action, Santiago did not assert any state or federal trademark or related claims against Melodrama. Compl. ¶ 28; Ans. ¶ 28. On July 7, 2011, this Court granted Melodrama's motion to dismiss the complaint. Compl. ¶ 29; Ans. ¶ 29. No appeal was taken.

On June 7, 2011—the same day Melodrama filed its motion to dismiss the prior action—Santiago's former attorney, Mr. Wooten, filed an application with the U.S. Patent and Trademark Office ("PTO") on Santiago's behalf seeking registration of the mark "Nisa Santiago." Compl. ¶¶ 34–36; Ans. ¶¶ 34–36. The application identifies Santiago as the owner of the mark, and identifies "a series of books and written articles in the field of fiction" as the relevant goods and services sold under the mark. Compl. ¶ 34; Ans. ¶ 34; Trademark/Service Mark Application ("Application"), ex. D to Affidavit of Robert J. Shapiro ("Shapiro Aff.").[1] The application also states that the earliest date of Santiago's "first use anywhere" was "at least as early as 06/07/2007," the date around which Santiago and Melodrama began negotiating a publishing agreement. Compl. ¶ 37; Ans. ¶ 37; Application. Further, the application states that Santiago's "first use in commerce" was "as early as 04/28/2009," the date on which Melodrama first published *Cartier Cartel.* Compl. ¶ 38; Ans. ¶ 38; Application. As a specimen, Santiago included an image of the cover of *Cartier Cartier* with her application. *Id.* As required by Section 1(a)(3) of the Lanham Act, the application also includes a declaration signed by Wooten stating that, to the best of his knowledge, Santiago is the owner of the mark, no other entity has the right to use the mark in commerce, and all statements in the application are true and correct. Compl. ¶ 34; Ans. ¶ 34; Application.

*3 Santiago now repeatedly admits in her answer that she has never used the mark "Nisa Santiago" in commerce. Compl. ¶¶ 42, 61, 68, 81; Ans. ¶¶ 42, 61, 68, 81. Santiago also now admits that Melodrama has been using that mark in commerce since 2007 in connection with selling works of fiction both in New York and in interstate commerce. Compl. ¶ 57; Ans. ¶ 57. Further sill, Santiago now admits that she knew that she did not put into commerce *Cartier Cartel, Return of the Cartier Cartel,* or any other book published by Melodrama under the pseudonym "Nisa Santiago." Compl. ¶ 43; Ans. ¶ 43. Nevertheless, Santiago's trademark application did not identify Melodrama as an entity holding the right to use the mark.

On September 22, 2011, the PTO issued an Office Action regarding Santiago's trademark application, requesting, *inter alia,* that she provide evidence that the mark is used in connection with a fictional series rather than merely a single work. In response, on Santiago's behalf, Wooten submitted images of the covers of Melodrama's publications of *Cartier Cartel* and *Return of the Cartier Cartel,* which identify the author of those novels as "Nisa Santiago." Shapiro Aff., ex. E. Several months later, on May 1, 2012, the PTO approved Santiago's application and issued a registration. Compl. ¶ 60; Ans. ¶ 60; Shapiro Aff., ex. F.

Thereafter, in a letter dated September 25, 2012, Wooten notified Melodrama of the trademark registration and asserted that "[t]his registration constitutes conclusive evidence of [Santiago]'s ownership of the Nisa Santiago Mark as well as [Santiago]'s exclusive right to use the mark." Compl. ¶¶ 49, 50; Ans. ¶¶ 49, 50; Shapiro Aff., ex. H. The letter further asserts that Melodrama's use of the "Nisa Santiago" name "constitute[s] an infringement of [Santiago]'s trademark rights" and demands that Melodrama "immediately cease and desist all uses of the mark Nisa Santiago effective immediately," under threat of "injunctive action" and "money damages including, but not limited to your profits derived from the use of the mark and attorney fees." *Id.* The next month, Wooten sent a letter to at least one of Melodrama's book distributors, notifying the distributor of the cease and desist letter sent to Melodrama and warning the distributor of potential trademark infringement and dilution claims if they continued to distribute and sell Melodrama's titles. Compl. ¶¶ 51–55; Ans. ¶¶ 51–55; Shapiro Aff., ex. J; *see also* Shapiro Aff. ¶ 12 (stating that Melodrama's counsel "has been informed by Amazon that it would not continue selling Plaintiff's titles as a result of Defendant's litigation threats until this lawsuit is resolved").

Melodrama filed its complaint in this action on October 19, 2012. Represented by Mr. Wooten, Santiago filed an answer *on* November 12, 2012. Melodrama then filed its motion for judgment on the pleadings on December 19, 2012. On December 31, 2012, while Melodrama's motion was pending, Mr. Wooten filed a motion to withdraw as defense

counsel for health reasons. On January 4, 2013, at an in-court conference that Santiago attended by telephone, the Court granted Wooten's motion to withdraw, and gave Santiago two weeks to obtain new counsel. After repeated extensions of Santiago's time to obtain new counsel, Santiago's present counsel filed an appearance on March 1, 2013, and filed Santiago's opposition to Melodrama's motion the same. After receiving reply papers from Melodrama, the Court held oral argument on this motion on March 18, 2013.

*4 The first four counts of Melodrama's complaint seek a declaratory judgment cancelling Santiago's federal trademark registration on four grounds: lack of use in commerce, lack of ownership, likelihood of confusion with a previously used mark, and fraud.[2] Although Melodrama prevails if it establishes any one of these grounds for cancellation, the Court is persuaded here that all four are met.

As to the argument that Santiago has not used the mark in commerce, Section 1 of the Lanham Act permits registration of marks only by "[t]he owner of a trademark used in commerce." 15 U.S.C. 1051(a); *see also Int'l Mobile Machines Corp. v. Int'l Tel. & Tel. Corp.*, 800 F.2d 1118, 1119 (Fed.Cir.1986) (noting that, under 15 U.S.C. § 1064(1), "cancellation of a mark's registration within the initial five years of registration may be based upon any ground which could have prevented registration initially"). Here, it is plain from the pleadings that Santiago has never used the "Nisa Santiago" mark in commerce, and, consequently, is not the owner of the mark.

To begin with, Santiago's answer straightforwardly admits, four separate times, that she has never used the mark "Nisa Santiago" in commerce. In two instances, Santiago qualifies her admission by-conceding only that she "personally has not used the mark in commerce," *see* Ans. ¶¶ 61, 68, but in the other two instances, she admits the fact outright and without reservation. *See* Compl. ¶ 42 ("Upon information and belief, Defendant has never used the mark 'Nisa Santiago' in commerce."); Ans. ¶ 42 ("The Defendant admits the allegations set forth in Paragraph 42 of Plaintiff's Complaint.); Compl. ¶ 81 (similar); Ans. ¶ 81 (similar). The Second Circuit has "held repeatedly that facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout the litigation." *N.L.R.B. v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 474 (2d Cir.2009) (per curiam). Santiago thus cannot now avoid the consequences of her binding admissions. And because Santiago has not used the mark in commerce, she cannot be the mark's owner. *See*

*ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir.2007) (noting the "well-established principle" that trademark rights derive from use in commerce).

At oral argument, Santiago's present counsel (not Mr. Wooten) requested leave to amend the answer to enable Santiago to argue that she has in fact used the mark in commerce. But it is well settled that leave to amend a pleading, though "freely give[n] ... when justice so requires," Fed.R.Civ.P. 15(a)(2), may properly be denied where it would cause "undue prejudice to the opposing party." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008) (noting that "prejudice to the opposing party [is] the most important factor and the most frequent reason for denying leave to amend") (internal quotation marks omitted)). In the typical case, a defendant seeks leave to file an amended answer in order to assert an omitted affirmative defense. *See, e.g., Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 45 (2d Cir.1983). Here, however, Santiago seeks to withdraw her repeated admission of a crucial factual allegation, which has now been the subject of a fully briefed and argued motion. Moreover, consideration of that motion has already been greatly delayed by Santiago's repeated failure to promptly obtain new counsel. In these circumstances, forcing Melodrama to endure the time and expense of filing and briefing a new motion based on a new answer would be highly prejudicial. This is especially so given that at least one of Melodrama's distributors has indicated that it will not resume selling Melodrama's titles until this case is resolved. *See* Shapiro Aff. ¶ 12.

*5 Even more fundamentally, granting Santiago leave to amend her answer would be entirely futile. *See Ruotolo*, 514 F.3d at 182 (noting that leave to amend may be denied for futility). Through her new counsel, Santiago argues that she in fact used the "Nisa Santiago" mark in commerce in two ways—in her negotiations and subsequent contracts with Melodrama, and in the two draft chapters and plot synopsis she allegedly sent to Melodrama. But neither of these alleged uses constitutes a "use in commerce" under the Lanham Act. The "talismanic test" for whether a given use of a mark constitutes a statutory "use in commerce" is "whether or not the use was 'sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark.' " *Marvel Comics Ltd. v. Defiant, a Div. of Enlightened Entm't Ltd.*, 837 F.Supp. 546, 548 (S.D.N.Y.1993) (quoting *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417 (1st Cir.1951)). Here, the uses Santiago points to—her negotiations, her contract,

and her draft chapters and synopsis—are not alleged to have been disseminated to anyone other Melodrama, a single intermediary in the market for works of fiction. There is thus no indication that Santiago's alleged "uses" ever reached even a single end consumer in the relevant market, much less a sufficient portion of the consuming public to identify the mark with a particular source of goods. Santiago's request for leave to amend is thus denied, and her binding admissions remain in place.

Independently, Santiago's trademark registration must also be cancelled because the mark is confusingly similar—indeed, identical—to Melodrama's own mark. *See* 15 U.S.C. § 1052(d). As Melodrama points out, Santiago admits in her answer that Melodrama first used the mark in commerce in 2007, making Melodrama the senior user and owner of the mark. Compl. ¶ 57; Ans. ¶ 57. In addition, the two marks are identical and are to be used in connection with the same class of goods (novels) sold through the same channels of commerce (bookstores). Furthermore, novels are relatively inexpensive, and thus are likely to be bought on impulse rather than after extensive research. These facts are more than sufficient to conclude that "the purchasing public would mistakenly assume that the applicant's goods originate from the same source as, or are associated with, the goods of [the senior user]." *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 1314–15 (Fed.Cir.2003) (affirming PTO's denial of a registration application on these grounds).

Finally, Melodrama also seeks cancellation of Santiago's registration on grounds of fraud. *See* 15 U.S.C. § 1064(3). To prevail on this claim, Melodrama "must establish misstatements that 'indicate a deliberate attempt to mislead the [PTO]' and were 'with respect to a material fact—one that would have affected the PTO's action on the application.' " *City of New York v. Tavern on the Green, L.P.*, 427 B.R. 233, 242 (S.D.N.Y.2010) (quoting *Orient Exp. Trading Co., Ltd. v. Federated Dept. Stores, Inc.*, 842 F.2d 650, 653 (2d Cir.1988)). Here, Melodrama contends that Santiago's application contains four misrepresentations justifying cancellation. First, Santiago's application states that she first used the mark in commerce "at least as early as 04/28/2009," but she now admits that she has never used the mark in commerce. Second, Santiago submitted Melodrama's book covers to the PTO as specimens without mentioning that the book covers were Melodrama's rather than her own. Third, she represented that she owned the mark, even though she now admits that she never used it in commerce and the July 2007 contracts she signed expressly disclaim giving her any right to the mark. And fourth, Santiago knew that Melodrama had used the mark in commerce and that Melodrama had not given Santiago any contractual right to use the mark, but never mentioned to the PTO that Melodrama had a right to use the mark. *See Tavern on the Green,* 427 B.R. at 243 ("The deliberate omission in a trademark application regarding another's right to use the mark applied for is a material omission justifying cancellation of the mark.").

*6 In response, Santiago notes that a claim for cancellation on grounds of fraud cannot rest on mere negligence or even gross negligence, but rather requires a showing of a deliberate "intent to deceive." *In re Bose Corp.*, 580 F.3d 1240, 1244 (Fed.Cir.2009). Santiago asserts that she believed in good faith that she had used the "Nisa Santiago" mark in commerce in her negotiations and contracts with Melodrama, as well as in the draft chapters and plot synopsis that she sent to Melodrama, and that these uses preceded Melodrama's first use in commerce.

But as Melodrama points out in reply, there is a fatal conflict between the uses Santiago now argues in her opposition brief and the uses she represented to the PTO in her trademark application. Santiago now relies on her negotiations, contracts, and writing samples, but she never mentioned those supposed uses of the mark in any of her submissions to the PTO. Instead, Santiago's application fraudulently sought registration of the mark in connection with "a series of books and written articles in the field of fiction." Even assuming that Santiago reasonably believed that she had a right to the mark that superseded Melodrama's rights, it is undisputed that she never used the mark in connection with any article or book, let alone a series. Furthermore, and most damningly, Santiago fraudulently submitted images of the covers of three of Melodrama's books to the PTO as supposed examples of her own use of the mark, without ever mentioning that she had not written the books, and, indeed, had no connection to them beyond her then-terminated publishing contracts with Melodrama. In these circumstances, the conclusion that Santiago procured her trademark registration by fraud is inescapable.

Accordingly, on each and all of these bases, Melodrama's motion for a declaratory judgment cancelling Santiago's trademark registration is granted.

In addition to seeking cancellation of Santiago's trademark registration, Melodrama also seeks damages for fraudulent registration of a mark. The Lanham Act provides that "[a]ny

person who shall procure registration in the [PTO] of a mark by false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120.

As explained above, the pleadings in this case clearly establish that Santiago procured her trademark registration by fraud. Moreover, Santiago's fraudulent registration harmed Melodrama by forcing it to bear the costs of bringing this action for cancellation, and by using the registration to threaten Melodrama's distributors, resulting in lost profits and reputational injury.

The Court thus grants Melodrama's motion for judgment of liability on its claim for damages for fraudulent registration. However, because the amount of damages Melodrama has suffered is unclear at this stage, the Court refers this claim to the designated Magistrate Judge for an inquest into damages. With regard to that inquest, the Court observes that, on the present record, while it is clear that Santiago's registration was procured by fraud and that Melodrama was harmed thereby, it is not clear to what extent the unlawful conduct originated with Santiago herself or with her former counsel, Mr. Wooten. Indeed, it was apparently Wooten who submitted the fraudulent trademark application to the PTO, deceitfully supported that application with images of Melodrama's book covers, and sent the baseless threatening letters to Melodrama and its distributors. Accordingly, at the inquest, the Magistrate Judge is free to inquire into the state of mind of Santiago and of Wooten. To the extent he finds it relevant, the Magistrate Judge may consider those states of mind in determining the appropriate measure of damages to be awarded.

*7 Melodrama also seeks attorney's fees under 15 U.S.C. § 1117(a), which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Second Circuit has interpreted "exceptional cases" to mean instances of "fraud or bad faith, or willful infringement." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 317 F.3d 209, 221 (2d Cir.2003) (internal quotation marks and citations omitted). As explained above, this case clearly involves fraud. Accordingly, judgment of liability in Melodrama's favor is also granted on the claim for attorney's fees, with the amount of fees awarded to be determined by the Magistrate Judge in the damages inquest.

Finally, Melodrama seeks a permanent injunction requiring her to cease and desist from using the "Nisa Santiago" mark. "To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006) (internal quotation marks omitted). A party's "pre-lawsuit behavior may serve as a basis for a permanent injunction, as it may indicate that defendant's intentions are in doubt." *Gucci Am., Inc. v. Guess?, Inc.,* 868 F.Supp.2d 207, 256 (S.D.N.Y.2012) (citing *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 405 (2d Cir.2004)). Here, Santiago has already brought one action against Melodrama arising out of their dealings concerning the Nisa Santiago novels, but this Court's dismissal of that action with prejudice did not dissuade her and Mr. Wooten from fraudulently procuring a trademark registration and using it as the basis for sending threatening letters to Melodrama and its distributors. Fraud, baseless threats of vexatious litigation, and unlawful interference with Melodrama's business relationships are more than sufficient to justify the injunction Melodrama seeks. The permanent injunction is therefore granted.[3]

Accordingly, for the foregoing reasons, the Court grants Melodrama's motion for judgment on the pleadings in its entirety. The Court hereby (1) enters a declaratory judgment in favor of Melodrama ordering the cancellation of Santiago's registration for the U.S. Trademark "Nisa Santiago," Registration No. 4,134,392, (2) enters judgment of liability in favor of Melodrama on its claim for fraudulent registration of a trademark, (3) awards attorney's fees to Melodrama, (4) permanently enjoins Santiago from using, directly or indirectly, the mark "Nisa Santiago," and (5) refers the case to the Magistrate Judge for an inquest into the amount of damages and attorney's fees to be awarded.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1700929

Footnotes

1   Because Santiago's trademark application and the supporting materials she submitted are referenced and relied upon in the complaint, the Court may consider them on the instant motion. See *In re Bakery & Confectionery Union*, 865 F.Supp.2d at 472 (holding that, in resolving a motion for judgment on the pleadings, a court "may review any document incorporated in one of the pleadings," as well as any "document not specifically incorporated by reference but on which the complaint heavily relies and which is integral to the complaint").

2   This Court is authorized to cancel a trademark registration under the Lanham Act. See 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.").

3   Under the heading "Affirmative Defenses," Santiago's answer alleges that she created and owns the "Nisa Santiago" mark and that Melodrama later used it in commerce. Ans. ¶¶ 112–14, 116, 119–20. To the extent that these allegations are construed as a counterclaim for trademark infringement, that counterclaim is barred as res judicata, since it arises from the same facts as Santiago's earlier action filed against Melodrama, but was not raised in that action. See *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir.2008). In any event, since, as discussed above, Santiago has never used the "Nisa Santiago" mark in commerce, any counterclaim for trademark infringement is meritless, and is hereby dismissed.

**End of Document**                                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.