UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE SPACE SOLUTIONS, INC.,

                Plaintiff,

    -*against*-

JASON KNEEN,

                Defendant.

Civil Action No.: 15CV4941(LAK)

ECF Case

**PLAINTIFF'S REPLY MEMORANDUM OF LAW**

**PRELIMINARY STATEMENT**

In a motion brought by Order to Show Cause on June 29, 2015, Plaintiff sought preservation of the status quo by a prohibition against transfer of the domain that is the subject of this case during its pendency.  Defendant does not dispute that he has held the domain in a United States registrar for over 16 years and has made no use of it.  Defendant does not claim he will suffer any prejudice whatsoever if the TRO is converted to a Preliminary Injunction so that the domain stays at the U.S. Registrar while the case is decided.  Yet, in a 28-page Memorandum of Law, riddled with random unsupported attacks on the Plaintiff, the Defendant seeks to obfuscate the core landscape in this matter.

**ARGUMENT**

The reason for Defendant and his counsel's attempted distraction is likely based on their familiarity with the evils that the Anticybersquatting Consumer Protection Act was intended to prevent.

> The practice of cybersquatting harms consumers, electronic commerce, and the goodwill equity of valuable U.S. brand names, upon which consumers increasingly rely to locate the true source of genuine goods and services on the Internet. Online consumers have a difficult time distinguishing a genuine site from a pirate site, given that often the only indications of source and authenticity of the site, or the goods and services made available thereon, are the graphical interface on the site itself and the Internet address at which it resides.

S. REP. 106-140, 5

Defendant argues that it was not registering domains over the years for the purpose of warehousing them and seeking a "payoff" from a legitimate businessperson that might start a business or seek to start a business with the same or similar name.

> [m]any cybersquatters are now careful to no longer offer the domain name for sale in any manner that could implicate liability under existing trademark dilution case law. And, in cases of warehousing and trafficking in domain names, courts have sometimes declined to provide assistance to trademark holders, leaving them without adequate and effective judicial remedies. This uncertainty as to the trademark law's application to the Internet has produced inconsistent judicial decisions and created extensive monitoring obligations, unnecessary legal costs, and uncertainty for consumers and trademark owners alike….. Frequently, these obstacles lead trademark owners to simply "pay off" cybersquatters, in exchange for the domain name registration, rather than seek to enforce their rights in court.

S. REP. 106-140, 7

Defendant claims he was not doing this and was instead holding onto just a handful of domains for the possibility of himself using them in the future.  While certifying that is a UK citizen and has no assets in the U.S., he asks this Court to find that he was not warehousing domains and that there is no need to preserve the status quo in this case by ensuring that the domain is not transferred out of this country while this matter is pending.

Defendant refers to a handful of names in his Declaration making statements such as, "I believed they would become useful for a range of applications for such computing devices". Paragraph 7 of Kneen Declaration dated July 2, 2015.  "I believed this set of domains would be useful for future development for productivity application software".  *Id.* @ paragraph 8.  "**I am not engaged in the business of registering domain names for resale**".  *Id.* @ paragraph 9.

These certifications defy the record as follows:

1.  **Exhibit B** to the Khan Declaration contains a central portion of Defendant's personal website entitled "Domains" with the subheading "Here's a list of domains I have for sale:". Following is a list of over 100 domains.

2.  When approached by Harsh Mehta for the purchase of workbetter.com for $500, Defendant replied "**wouldn't be interested at that price**".  See May 8, 2014 email attached as **Exhibit A** to the Kneen Declaration.  When Harsh replied … we "are happy to consider a number you think is fair".  *Id* May 12, 2014 email from Harsh Mehta to Defendant. Defendant again focused on the "payoff" referring to a situation where he charged a small Australian company too little.  *Id*.

3.  Defendant mentioned that he was aware that another business was considering using the mark Work Better, which would in Defendant's view drive the value of the domain. *Id*. Defendant intended to wait it out for a higher price, "**I can tell you that the price I would be after would be too high**…". *Id*. May 15, 2015 email from Defendant to Harsh Mehta. Defendant did not even respond to Harsh's reply of same date, "I can assure you this is for our use.  Happy to agree to a covenant against a sale and/or share in upside in the unlikely event of a sale.  What are your thoughts on the cost?" *Id.* May 15, 2014 email from Harsh Mehta to Defendant.

Defendant has not made a single use of the workbetter.com domain in the 16 years that he has held onto it, was aware that companies are considering legitimate businesses with respect to the name, and is resisting allowing the Plaintiff to obtain the domain for a business called Work Better that is now operating under a registered trademark of the same name.

"The statute lists nine factors that "a court may consider" when "determining whether a person has [such] bad faith intent," including—as relevant here—the registrant's prior use of the domain name to conduct bona fide business, *see id.* § 1125(d)(1)(B)(i)(III); the registrant's offer to sell the domain names "without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services," *id.* § 1125(d)(1)(B)(i)(VI); and the registrant's "acquisition of multiple domain names" related to the mark, *id.* § 1125(d)(1)(B)(i)(VIII)". *Bogoni v. Gomez*, 847 F. Supp. 2d 519, 524 (S.D.N.Y. 2012).  (Seeking a price for the domain "exorbitantly beyond the Domain Names' actual value to anyone other than the plaintiff" is strong probative evidence of intent to profit).

Nor has the Defendant made use of any of the over 100 domains that he has stockpiled over the years and placed on his website under a "For Sale" subheading.  It is this hard evidence that refutes the attempt in the Defendant's papers to portray himself as doing something other than warehousing domains for a pay-off.

Counsel attempts also to imply that somehow the Plaintiff's rights did not start until February 11, 2015, even though it applied for the mark under §1(b) of the Lanham Act (an intent to use application) on April 25, 2014.  Counsel fails to mention that under the Lanham Act, when a party files an intent to use application, the date of use reverts back to the filing date.  Accordingly, it is academic that Plaintiff's use in commerce started on February 11, 2015, and

Defendant renewed on February 15, 2015.[1]

Defendant questions the integrity of the sworn statements contained in Application, now in the Certificate of Registration. Of course if there are any grounds to seek cancelation based on fraud, other than mere suspicion, the Court will allow discovery into these areas. But this clearly does not affect the preservation of the status quo.

Defendant then makes the incredulous argument that Plaintiff must have known that the domain renewal was consummated on February 15 and therefore Plaintiff must have committed fraud by backdating its use in commerce date to February 11, 2015 and that also Plaintiff must have been of the view that the use in commerce date rather than the application date was what controlled. All of these presumptions are the complete opposite of what the Plaintiff argued in its opening brief, not to mention that the accusations are unfounded, irresponsible, and are an indication that the Defendant is grasping at straws however unprofessional they may be.

Plaintiff's opening brief supplied authority from other circuits finding distinctiveness as of the date of the trademark application. It is respectfully submitted that this is consistent with the statute which uses the application date for priority purposes as well. "Under 15 U.S.C. §§ 1051(b), 1051(d), and 1057(c), as long as an applicant's mark is eventually granted registration on the principal register, and as long as the applicant does, in fact, use the mark in commerce within a set period of time thereafter, the filing of an intent to use application constitutes 'constructive use of the mark, conferring a right of priority, nationwide in effect'." *CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 629 (9th Cir. 2007). See also *Weld-Tech Aps v. Aquasol Corp.*, 2014 WL 4627227, at *2 (W.D.N.Y. 2014)("federal registration of a mark grants nationwide priority as of the filing date of ... an intent-to-use application.").

---

[1] Plaintiff's opening brief cites the Defedant's renewal as February 7, 2015, because that is what is mentioned in the "whois" record annexed as **Exhibit C** to the Khan Declaration.

In the event this Court departs from this non-governing authority, the Defendant now concedes that he renewed on February 15, 2015, after Plaintiff's February 11 use in commerce. Counsel's unprofessional bald accusation that the Plaintiff's use in commerce date must have been back dated is a red herring. Obviously if discovery supports such serious misconduct there would be consequences. But Defendant's certification that the closeness in the dates leads to such a conclusion is frivolous.

Allowing courts to apply the renewal date when considering whether there is a distinctive trademark in existence, stop the very harm that is imposed by what Kneen is arguing he should be allowed to impose. Following the reasoning of the cases cited by the Plaintiff in its opening brief, allows courts to prevent the warehousing of domains as is happening here to the detriment of businesses or businesspersons that want to start legitimate commerce around those names.

By using the renewal date, it would not matter if somebody registered a domain 16 years ago or 60 years ago, because if they are not using the domain for any commerce whatsoever, and another business is, it is that business that should be allowed to use the domain with respect to the name of the business. Obviously, this result promotes commerce and reduces confusion.

The opposite result, the one urged by Defendant's counsel, is to allow warehousers or stockpilers of domains like Kneen to demand a payoff from the trademark owner or allow the public to simply be confused. There is no question that a trademark owner like the Plaintiff that established a business and continues to promote a business around the trademark Work Better, would be the appropriate source that the public should be directed to when typing in workbetter.com. But under the Defendant's scenario, if the Plaintiff chooses not to pay the exorbitant price that the Defendant is demanding for the domain that he has warehoused, the public would be directed to whatever place Defendant sends the public when it searches for the

Plaintiff's legitimate business. Source confusion would be inevitable. This cannot possibly be the result that the legislature intended when it enacted the ACPA.

The Defendant a highly successful international businessperson has flooded the blogosphere with messages that the Defendant and others like it should be required as a matter of policy, to pay whatever price the owner of a domain demanded. Defendant fails to discuss in his blogs that many times those that find themselves in the position of Plaintiff cannot afford a lawyer and cannot afford the payoff price and are therefore forced to create the scenario just reviewed where their business would operate under one name and the domain would exist in another source. Amazingly, counsel in her opposition brief, directs the Court to the blogs and disrespectfully suggests that the immense wisdom of this honorable Court should somehow be influenced by the blogs.

Adding to the litany of Defendant's random firing, is his claim that the specimen Plaintiff filed in February of 2015 signifies "first use" rather than "first use in commerce" and this unusual view is utilized by counsel in a dramatic claim of fraud. Defendant notes that Plaintiff certified a "first use" date of April 1, 2014 and a first use in commerce date of February 11, 2015, but then she seeks to lead this Court down a garden path, repeatedly claiming that the April 1 "first use" date should be connected to the specimen.

The United States Patent and Trademark Office makes clear however that the specimen represents evidence of "use in commerce" and as such is certified to be used as early as February 11, 2015.

> Prior to registration, the applicant must file an allegation of use (i.e., either an amendment to allege use under 15 U.S.C. §1051(c) or a statement of use under 15 U.S.C. §1051(d)) **that states that the applicant is using the mark in commerce on or in connection with the goods or services**, includes dates of use and a filing fee for each class, and includes one specimen evidencing such use for each class.

TMEP §806.01(b). (Emphasis Supplied).

The issue here is not one of absolute determination of the merits but one of preservation of the status quo.  The issue, as pointed out by the Defendant is one of "cyberflight".  The Defendant does not dispute that it can easily move the domain workbetter.com outside U.S. jurisdiction if this court does not grant the pending motion.  The Defendant does not cite any damage that would occur to him if the domain is frozen for the short period that this case will be pending, especially since he has held onto the name for 16 years and has not done a single thing with it.  The Defendant has not indicated that he plans to do anything with the domain workbetter.com or that the freeze would affect him in any way whatsoever.

WHEREFORE, it is respectfully requested that the temporary restraining order that was signed on June 29, 2015, be converted to a preliminary injunction so that during the pendency of this case, the status quo will be preserved and the workbetter.com domain cannot be transferred from the United States-based registrar where it currently resides.[2]

Dated:  New York, New York
        July 6, 2015

Respectfully submitted,

**BOSTANY LAW FIRM, PLLC**

__s/John P. Bostany_____
John P. Bostany (JB 1986)
Roman Popov (RP 7625)
*Attorneys for Plaintiff*
OFFICE SPACE SOLUTIONS, INC.
40 Wall Street, 28th Floor
New York, New York 10005
(212) 530-4400

Of Counsel

  Sarah E. Sears

---

[2] As this Reply Brief is being filed, counsel is filing additional papers in opposition well after the July 2 deadline set forth in the June 29 Order.  Accordingly, in the event the Court considers Defendant's late filed documents, we respectfully ask for an opportunity to address them in a Reply.